## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

WHITNEY HODGES,                                      Case No. 1:23-cv-1230
as Personal Representative of the
ESTATE OF HONESTIE HODGES,                           Honorable

       Plaintiff,

v.

CITY OF GRAND RAPIDS;
(FORMER) CHIEF DAVID RAHINSKY (official capacity);
OFFICER SPENCER SELLNER (individual
and official capacity); OFFICER
ANTHONY BARBERINO (individual and
official capacity); and, OFFICER JEFFREY
DIONNE (individual and official capacity),

       Defendants.
_____/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com
_____/

THERE IS NO OTHER CIVIL ACTION BETWEEN THESE PARTIES ARISING
OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN
THIS COMPLAINT PENDING IN THIS COURT, NOR HAS ANY ACTION
BEEN PREVIOUSLY FILED AND DISMISSED OR TRANSFERRED AFTER
HAVING BEEN ASSIGNED TO A JUDGE.

## COMPLAINT AND JURY DEMAND

## COMPLAINT AND JURY DEMAND

Plaintiff Whitney Hodges, Personal Representative of the Estate of Honestie Hodges, by and through her attorneys, DREW COOPER & ANDING, alleges and states as follows:

## INTRODUCTORY STATEMENT

1. This action is brought against the City of Grand Rapids pursuant to 42 U.S.C. §1983 for unnecessarily traumatizing and terrorizing an 11-year-old girl, Honestie Hodges, by holding her at gunpoint, handcuffing her, and placing her in custody in a police car as she was leaving her home to go to the store on a December evening.

2. The Grand Rapids Police Department ("GRPD") allegedly descended on Honesties' home in response to a call regarding a domestic incident unrelated to Honestie or any of the occupants of the house.

3. Honestie Hodges, at 11 years old and African American, did not in any way fit the description of the GRPD's suspect, who was an adult Caucasian woman.

4. Honestie was cooperative and responsive to the officers, even though terrified by the circumstances.

5. Honestie had not committed a crime.

6. Honestie posed no threat to the officers.

7. Honestie was not fleeing.

8. Without probable cause or reasonable suspicion that Honestie was committing or had committed a crime, in the presence of her mother and others, Honestie Hodges was detained at gunpoint, handcuffed, and placed in a police car --- nervous, afraid, and deathly fearful for her safety, and also the well-being of her family.

9.    Given the history and recent tragic interactions between law enforcement and African American citizens, Honestie had a legitimate fear that she would be shot and killed.

10.    The trauma Honestie endured that night lasted for the remainder of her short lifetime.

11.    After that confrontation by officers, Honestie's life was marred with extreme emotional and psychological distress significantly diminishing her quality of life and her ability to cope both physically and mentally.

12.    Honestie prematurely died on November 22, 2020 of complications from COVID-19 at the age of 14.

13.    The City of Grand Rapids, through the Grand Rapids Police Department, has exercised a pattern, custom, and practice of using excessive force, seizing, detaining and/or arresting African American children and youth citizens without probable cause or reasonable suspicion that the children had committed or were committing a crime.

14.    For example:

   a.    in March 2017, Grand Rapids Police Department officers held several African American boys at gunpoint as the boys were walking home after playing basketball;

   b.    in December 2017, Honestie Hodges was held at gunpoint outside of her home; and,

   c.    in August 2018, Grand Rapids Police Department officers similarly stopped two African American boys (11 years old) and a teenager, detained them, and held them at gunpoint.

15.    None of these children were armed, dangerous, or had committed any semblance of a crime.

16.    In March 2018, the GRPD adopted the "Honestie Policy" which calls for using the least restrictive option when interacting with minority children and youth citizens.

17.    Plaintiff, on behalf of The Estate of Honestie Hodges, seeks a declaration that Honestie's rights were violated and damages as compensation for the violation of her rights.

## JURISDICTION AND VENUE

18.    The paragraphs above are incorporated by reference as if fully stated herein.

19.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

20.    Jurisdiction is based on 28 U.S.C. § 1331 and § 1343(a) (1), (2), (3), and (4) and the aforementioned statutory and constitutional provisions, as this action seeks redress for the violation of Plaintiff's decedent's constitutional and civil rights.

21.    Plaintiff's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the general legal and equitable powers of this Court.

22.    Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

23.    Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, and under Michigan Law.

24.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

25.    The amount in controversy is within the jurisdiction of this Court as Plaintiff's claimed damages are in excess of $75,000.00.

## PARTIES AND KEY INDIVIDUALS

26.    The paragraphs above are incorporated by reference as if fully stated herein.

27.    Honestie Hodges is now deceased but was at all relevant times a resident of Grand Rapids, Michigan.

28.    Honestie is represented by Plaintiff Whitney Hodges (Honestie's mother) who was appointed to serve as Personal Representative of the Estate of Honestie Hodges (hereinafter "Plaintiff").

29.    Defendant City of Grand Rapids ("Defendant Grand Rapids" or "Grand Rapids") is a municipal corporation and is a governmental body organized and existing under the constitution and laws of the State of Michigan, operating as the City of Grand Rapids in the County of Kent, State of Michigan, and conducts business within the territorial limits of the United States District Court of the Western District of Michigan.

30.    Grand Rapids Police Department ("GRPD") is Defendant Grand Rapids' law enforcement body with a self-stated mission to "Protect life and property, prevent crime, and ensure all people feel safe and are safe at all times throughout our community."[1]

31.    Defendant David Rahinsky, former Chief of the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids and is sued in his official capacity.

32.    At all relevant times, the GRPD operated under the direction of Defendant Rahinsky, who was the chief law enforcement officer for the City of Grand Rapids and the final policymaker of the GRPD.

33.    The GRPD is an entity created by and responsible to Defendant City of Grand Rapids, and Defendant Rahinsky exercised his authority on behalf of and for the benefit of the City of Grand Rapids.

34.    Defendant Rahinsky was responsible for the enforcement of all applicable laws and for the

---

[1] https://public.powerdms.com/GRANDRAPIDS/documents/88410

- 5 -

arrest of all persons who were alleged to have violated the law within the jurisdiction of the City of Grand Rapids.

35.    Further, Defendant Rahinsky was responsible for ensuring that GRPD law enforcement officers enforce the law consistent with constitutional requirements.

36.    Defendant Spencer Sellner, an officer for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and is sued individually.

37.    Defendant Anthony Barberino, an officer for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and is sued individually.

38.    Defendant Jeffrey Dionne, an officer for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and is sued individually.

39.    Thomas Bush, a sergeant for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and responded to the scene.

40.    Jake Bloom, an officer for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and responded to the scene.

41.    Patrick Martin, an officer for the GRPD, was at all relevant times an agent and/or employee of Defendant Grand Rapids, and responded to the scene.

42.    At all relevant times, Defendants were acting under color of law, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan, Defendant Grand Rapids and the GRPD.

## **FACTUAL ALLEGATIONS**

43.    The paragraphs above are incorporated by reference as if fully stated herein.

44.    This is an action for damages and equitable and injunctive relief against Defendant City of Grand Rapids, former Chief David Rahinsky, and Officers Sellner, Barberino, and Dionne,

individually, for violating Honestie Hodges' constitutional rights and other rights accorded

her by common and statutory law.

45.    Honestie Hodges was the daughter of Whitney Hodges.

46.    In 2017, Honestie was living in the City of Grand Rapids, Kent County, Michigan.

47.    On December 6, 2017, Honestie was walking out of her back door with an adult family

friend, Aisha Rose, to go to a neighborhood store.

48.    Honestie was 11 years old.

49.    Honestie's mother, Whitney Hodges, watched Honestie leave out of the back door.

50.    As Honestie was leaving her home, GRPD officers abruptly and unexpectedly advanced

on Honestie with guns drawn.

51.    Defendant Sellner approached Honestie, who was standing on a step of the porch of her

residence near her mother, Whitney.

52.    Defendant Sellner had his gun drawn.

53.    Other officers on the scene also had their guns drawn, including Officer Martin.

54.    As Whitney witnessed the aforementioned actions by the GRPD she incredulously repeated

to the officers on scene:

a.    "What are you doing?";

b.    "She's 11 years old, sir.";

c.    "She's a child"

d.    "Let my daughter go."

e.    "You hear my baby crying" and,

f.    other similar comments.

55.    Aisha Rose also repeatedly told officers that Honestie was a child.

56.    Nevertheless, Defendant Sellner yelled commands at Honestie to approach him by walking backward with her hands raised.

57.    Honestie complied with Defendant Sellner's commands.

58.    Defendant Barbarino then commanded Honestie to put her right hand behind her back.

59.    Again, Honestie complied with Defendant Barberino's commands.

60.    Defendant Barbarino pulled out his handcuffs and handcuffed Honestie's hands behind her back.

61.    As Honestie was being handcuffed by Defendant Barbarino she immediately began crying, screaming, and repeatedly exclaiming, "No!"

62.    The sound of Honestie's cries and screams were obvious cries of a child experiencing immediate fear, panic, and distress.

63.    Defendant Barbarino told Honestie to "stop yelling" as he was handcuffing her and walking her toward Defendant Dionne.

64.    Honestie did not respond to the police in the manner that an adult would respond to law enforcement, but instead responded as a scared child would.

65.    At or around the same time, Officer Bloom handcuffed Ms. Rosa, though Ms. Rosa informed the officers that she, nor anyone at the Hodges residence, had done anything wrong.

66.    At or around the same time, Officer Sellner handcuffed Whitney Hodges.

67.    Neither Honestie, Ms. Rosa, nor Whitney Hodges made any movements to signal that they were fleeing the police, attempting to evade the officers on the scene, or were an immediate threat to anyone.

68.    Whitney Hodges continued to tell officers that Honestie was an 11-year-old child and

should not be handcuffed or detained.

69.    To the best of Plaintiff's knowledge, there were at least three to four squad cars present

     with several officers surrounding the Hodges' home.

70.    Honestie, while still handcuffed, was put in the custody of Defendant Jeffrey Dionne.

71.    Defendant Dionne walked Honestie to a nearby police car and searched her for weapons.

72.    Honestie can be heard crying and saying, "Okay," and complying with Defendant Dionne's

     commands.

73.    While Officer Dionne was walking Honestie to the police car he told Honestie, "Calm

     down, you're not going to jail, okay, *we might be at the wrong house*."

74.    Defendant Dionne asks Honestie questions, and in between cries, Honestie answers each

     question.

75.    Defendant Dionne was then instructed by Sergeant Bush to remove the handcuffs from

     Honestie.

76.    Defendant Dionne removed the handcuffs, sat Honestie in the police car, and closed the

     door.

77.    While Honestie was detained in the car alone, she continued to cry.

78.    It was determined that GRPD was looking for an adult Caucasian woman who had

     allegedly stabbed another individual at a different location.

79.    The suspect, an adult Caucasian woman, was described as wearing her hair in a ponytail

     bun and wearing a black coat.

80.    Honestie is African American and was an 11-year-old child at the time of the incident.

81.    Honestie's hair was not in a ponytail bun.

82.    Honestie did not match the description of GRPD's suspect.

83.    At some point during the incident, Defendant Barbarino stated, "*We took a child in custody at gunpoint. We're all going to be on the news now.*"[2]

84.    The officer eventually cleared the house and the scene. The suspect they were looking for was not at that location.

85.     After the traumatic incident with the officers, Honestie's suffered extreme emotional and psychological distress significantly diminishing her quality of life and her ability to cope both physically and mentally.

86.    Honestie had increasing difficulty interacting with authority figures such as parents, schoolteachers and administrators, and medical professionals.

87.    As a result of the incident, Honestie experienced panic/anxiety attacks, and required counseling and medication to address residual symptoms from the trauma caused by Defendants.

88.    Honestie's responses to the trauma caused by Defendants negatively affected her relationships with family, friends, and other individuals.

89.    Honestie's responses to the trauma caused by Defendants also interfered with her schooling and educational instruction.

90.    Honestie's grandmother, Alisa Niemeyer, filed a complaint with Defendant Grand Rapids regarding the incident on December 6, 2017.

91.    Defendant Grand Rapids allegedly investigated the incident and interviewed officers who were at the scene of the incident on December 6, 2017.

92.    Defendant Grand Rapids did not interview Honestie Hodges.

93.    Defendant Grand Rapids did not interview Whitney Hodges.

---

[2] Barbarino Body Cam Video beginning at T00:36:59Z.

94.   Instead, Defendant Grand Rapids reviewed statements given in a news media interview by Honestie and Whitney Hodges.

95.   Defendant Grand Rapids has the ultimate responsibility and authority to investigate the violation of constitutional rights of any individuals by its officers, and as a matter of acts, custom, policy and/or practice.

96.   Defendant Grand Rapids, failed to adequately and properly investigate the incident involving Honestie Hodges, including but not limited to failing to perform a thorough investigation into all of the events relating to the handcuffing and detention of Honestie Hodges and/or failing to thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the incident involving Honestie Hodges.

97.   Prior to the incident with Honestie, Defendants Sellner, Barbarino, and Dionne did not receive adequate training regarding community policing encounters with children.

98.   Honestie Hodges' rights were violated because Defendant Grand Rapids, and Defendant Rahinsky in his capacity as the former chief and final decision maker, tolerated, authorized and/or permitted customs, policies, practices and/or procedures of:

    a.   improper and ineffective policing encounters with children, especially minority children/youth citizens;

    b.   insufficient supervision of children/youth citizens;

    c.   insufficient training regarding proper interaction and policing of children/youth citizens; and,

    d.   unnecessary and unwarranted use of excessive force toward children/youth citizens.

99.   Defendant Grand Rapids' failure to adequately train and/or failure to follow proper policy, practice, or procedure significantly contributed to, and/or caused violations of Honestie Hodges' constitutional rights, including but not limited to the following:

a.   Failure to adequately train or failure to follow proper policy, practice, or procedure for using essential skills in identifying and responding to incidents involving a child/youth citizen;

b.   Failure to adequately train or failure to follow proper policy, practice, or procedure for use of force toward children/youth citizens; and,

c.   Otherwise failing to adequately train and/or failing to follow proper policy, practice, or procedure resulting in the violation of Honestie Hodges' constitutional rights.

100.   Defendant Grand Rapids, tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they trained their officers in a method that is designed or is known to cause harm, injury, and trauma to children/youth citizens.

101.   Defendant Grand Rapids, tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they failed to adequately screen, counsel, or discipline such individuals as described above, with the result that said officers were allowed to violate the rights of children/youth citizens such as Honestie Hodges.

102.   Following the incident, then Police Chief David Rahinsky gave a statement to the media regarding the incident indicating,[3]

a.   The officer's body-camera recordings were "disturbing;"

b.   The officers' actions were, "a discredit to the way the community's being served;"

c.   Honestie's screams, "dig at your heart;"

d.   "Listening to the 11-year-old's response makes my stomach turn … It makes me physically nauseous;" and,

---

[3] See articles available at https://www.wilx.com/content/news/Grand-Rapids-chief-Handcuffing-of-girl-11-was-disturbing-463734373.html, and https://www.mlive.com/news/grand-rapids/2017/12/police_handcuffing_girl_11_dis.html; https://www.nytimes.com/2017/12/15/8s/grand-rapids-police-girl-arrested.html.

e.    He saw the incident with Honestie, "as a breakdown in the way we police these situations."

103.    Prior to the incident with Honestie, Defendant Grand Rapids did not provide its employees with adequate training regarding interaction with children/youth citizens.

104.    Prior to the incident with Honestie, Defendant Grand Rapids had no policy for its officers to follow when interacting with children/youth citizens.

105.    After the incident Chief Rahinsky indicated that GRPD was reviewing its policies, procedures, and training as it related to officers' interaction with children/youth citizens.

106.    In March 2018, the GRPD adopted the "Honestie Policy" which calls for using the least restrictive option when interacting with children and youth citizens.

107.    Defendants' actions and inactions were in violation of Honestie Hodges' federal constitutional rights and other rights accorded to her by common and statutory laws.

108.    Defendants' actions and inactions were also in violation of Michigan common and/or statutory laws.

109.    In whole or in part, as a result of some or all of the above actions and inactions of the Defendants, Honestie Hodges' rights were infringed upon as a result of being handcuffed and detained at gunpoint by officers.

## COUNT I
## 42 U.S.C. §1983 UNREASONABLE SEARCH AND SEIZURE
## U.S. CONST. AMEND. IV
## DEFENDANTS SELLNER, BARBERINO, DIONNE

110.    The paragraphs above are incorporated by reference as if fully stated herein.

111.    The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by the government.

112.   Accordingly, the Fourth Amendment prohibits police from subjecting citizens to arrest in the absence of probable cause or reasonable suspicion to believe the individual in question is engaged in wrongdoing.

113.   The City of Grand Rapids, through the GRPD, including Defendants Sellner, Barberino, and Dionne, had a policy, practice, pattern, or custom of seizing, detaining, and/or arresting African American children/youth citizens when there is no probable cause or reasonable suspicion to believe these children had committed a crime.

114.   As described in detail above, Defendants Sellner, Barberino, and Dionne seized and detained Honestie at gunpoint (which by its very nature is a seizure and use of excessive force), with the use of handcuffs, and by placing her in a police car, in the absence of probable cause or reasonable suspicion that she had committed any crime.

115.   Defendants, by seizing and detaining Honestie in the absence of probable cause or reasonable suspicion that she had committed a crime, violated Honestie's clearly established right to be free from unreasonable searches and seizures.

116.   As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from the illness that contributed to and ultimately caused her death.

**COUNT II**
**42 U.S.C. § 1983**
**FALSE ARREST/FALSE IMPRISONMENT**
**DEFENDANTS BARBERINO & DIONNE**

117.   The paragraphs above are incorporated by reference as if fully stated herein.

118.    Honestie Hodges had a clearly established right under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from unreasonable seizures of her person.

119.    Honestie was handcuffed and detained for no legitimate reason.

120.    Honestie did not fit the description of a GRPD suspect.

121.    Honestie did not try to flee the presence of the GRPD when she encountered them.

122.    Honestie was not armed, believed to be armed, nor did she pose any immediate threat or danger to anyone.

123.    Honestie did not make any movements that caused a threat to any of the GRPD officers on scene.

124.    Defendants Barberino and Dionne's unreasonable seizure of Honestie escalated events which led to Honestie being handcuffed and wrongfully imprisoned in a police car.

125.    Defendants Barberino and Dionne detained Honestie without probable cause or reasonable suspicion that Honestie was committing or had committed a crime.

126.    Defendants Barberino and Dionne's acts were objectively and subjectively unreasonable under the circumstances.

127.    Defendants Barberino and Dionne acted in a deliberate, grossly negligent, and/or reckless manner when they handcuffed and detained Honestie.

128.    In subjecting Honestie to the seizure and detention, Defendants Barberino and Dionne deprived Honestie of her constitutional and federal rights.

129.    Defendants Barberino and Dionne acted maliciously, with callous or reckless disregard, and deliberate indifference as to whether Honestie's rights would be violated by their actions.

130.    As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges

suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification,

psychological and emotional distress, and physical pain and suffering, and it is believed that

her diminished emotional and physical condition as a result of the trauma she endured and its

lasting effects led to the weakening of her body and made her more susceptible to

complications from illness that contributed to and ultimately caused her death.

**COUNT III**
**42 U.S.C. § 1983 - EXCESSIVE FORCE**
**U.S. CONST. AMEND. IV**
**DEFENDANTS SELLNER AND BARBERINO**

131.    The paragraphs above are incorporated by reference as if fully stated herein.

132.    The Fourth Amendment to the United States Constitution guarantees citizens to be free from

unreasonable searches, seizures, and the use of excessive force.

133.    The aforementioned acts by Defendants Sellner, Barberino, and Dionne were committed

under color of state law.

134.    As law enforcement officers acting under color of law, Defendants Sellner, Barberino, and

Dionne were required to obey all laws of the United States of America.

135.    Based on the totality of the circumstances, Defendants Sellner, Barberino, and Dionne's

actions as described above were objectively unreasonable.

136.    Defendant Sellner lacked any lawful basis to draw his weapon and point it toward Honestie.

137.    The drawing and pointing of the weapon directly towards an unarmed child under the

circumstances was use of excessive force.

138.    Defendant Barberino lacked any lawful basis to handcuff Honestie.

139.    Defendant Dionne lacked any lawful basis to detain Honestie in the back of a police cruiser.

140.   When Honestie was handcuffed and detained in the back of a police cruiser, Defendants Sellner, Barberino, or Dionne had no information to support a reasonable suspicion that Honestie was armed.

141.   Honestie was not armed and posed no threat to Defendants Sellner, Barberino, Dionne, or any other officers on scene.

142.   When Honestie was handcuffed and detained in the back of a police cruiser, Defendants Sellner, Barberino, or Dionne had no information to support a reasonable suspicion that Honestie was dangerous.

143.   When Honestie was handcuffed and detained in the back of a police cruiser, Defendants Sellner, Barberino, or Dionne had no information to support a reasonable suspicion that Honestie was fleeing.

144.   Upon seeing GRPD officers on scene, some guns drawn, Honestie reacted as a reasonable 11-year-old and began crying and screaming.

145.   No reasonable officer would have interpreted Honestie's cries and screams as a reasonable basis to detain Honestie or use force.

146.   Defendants Sellner and Barberino's actions of drawing their weapon and handcuffing Honestie constituted excessive force in violation of the Fourth Amendment.

147.   The acts were committed by Defendants with callous and/or reckless disregard and/or with deliberate indifference, and deprived Honestie Hodges of the following clearly established and well-settled rights, privileges and immunities under the laws and Constitution of the United States:

   a.   Freedom from the use of excessive, unreasonable, and deadly force in violation of Honestie Hodges' Fourth and Fourteenth Amendment rights;

b.    Freedom from seeking and enjoying equal rights, privileges and immunities of citizens of the United States and the State of Michigan, including such rights as free speech, assembly, association and movement, and due process; and,

c.    Otherwise violating the rights of Honestie Hodges.

148.    Defendants Sellner and Barberino subjected Honestie to these deprivations of rights maliciously and/or by acting with callous and/or reckless disregard, and with deliberate indifference as to whether Honestie's rights would be violated by their actions.

149.    Defendants Sellner and Barberino are not afforded the protections of qualified immunity as their actions with respect to excessive force violate clearly established laws that a reasonable officer should know.

150.    As a direct and proximate result of Defendants' actions, Honestie Hodges was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

151.    As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

**COUNT IV**
**42 U.S.C. § 1983 – MUNICIPAL LIABILITY**
**DEFENDANT CITY OF GRAND RAPIDS**

152.    The paragraphs above are incorporated by reference as if fully stated herein.

153.    Defendant Grand Rapids has the ultimate responsibility and authority to train and supervise officers of the GRPD in appropriate and reasonable:

a.    use of force toward children; and,

b.     measures to reduce the use of excessive force toward children.

154.   Defendant Grand Rapids had a custom, pattern, practice, and policy of failing to adequately train and supervise officers of the GRPD in the proper use of force toward children, which led to a violation of Honestie Hodges' rights which deprived her of her Constitutional rights under the Fourth Amendment of the United States Constitution at all times material to this complaint.

155.   Defendant Grand Rapids' failure to adequately train and supervise officers of the GRPD regarding multiple and varied proper policies, practices, and procedures ultimately resulted in harm to Honestie Hodges and includes but is not limited to the following:

a.     Failure to adequately train and/or failure to follow proper policy, practice and/or procedure for using force toward children/youth citizens;

b.     Failure to adequately train and/or failure to follow proper policy, practice and/or procedure with respect to engaging a child/youth citizen;

c.     Failure to adequately train and/or failure to follow proper policy, practice and/or procedure for using essential skills in identifying child/youth citizen who is not a suspect on a particular call; and,

d.     Otherwise failing to adequately train and/or failing to follow proper policy, practice and/or procedure resulting in the infringement of Honestie Hodges' constitutional and federal rights.

156.   Defendant Grand Rapids has the ultimate responsibility to establish, promulgate, and enact policy for the benefit of its child citizens.

157.   At the time of Honestie Hodges' death, Defendant Grand Rapids had no policy, or inadequate policies, providing for the safe and appropriate policing and interaction with children citizens.

158.   Defendant Grand Rapids has the ultimate responsibility and authority to investigate citizen complaints that allege harm to a child citizen at the hands of its officers and as a matter of acts, custom, policy and practice, Defendants Grand Rapids and Rahinsky failed to adequately

and properly investigate complaints related to the incident involving Honestie Hodges, including but not limited to, failing to perform a thorough investigation into all of the events relating to the use of force, seizure, and unlawful detainment of Honestie Hodges and failing to thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the incident involving Honestie Hodges.

159. By these actions and inactions, Defendant Grand Rapids, as a matter of acts, custom, policy and practice, deprived Honestie Hodges of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

160. As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

### COUNT V
### 42 U.S.C. § 1983 – FAILURE TO TRAIN AND SUPERVISE
### DEFENDANTS GRAND RAPIDS AND RAHINSKY

161. The paragraphs above are incorporated by reference as if fully stated herein.

162. Defendants Grand Rapids and Rahinsky had the ultimate responsibility and authority to train and supervise officers of the GRPD in the appropriate use of force toward children/youth citizens, de-escalation techniques and methods for interactions with children/youth citizens, and as a matter of acts, custom, policy, and practice failed to do so with deliberate indifference.

163. Defendants Grand Rapids and Rahinsky had a custom, practice, or policy and failed to adequately train and/or supervise officers of the GRPD in the proper use of force toward

children, and de-escalation techniques and methods for interactions with children, which led to a violation of Honestie Hodges' rights, which deprived her of her Constitutional rights under the Fourth Amendment of the United States Constitution at all times material to this complaint.

164. Defendants Grand Rapids and Rahinsky implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of Defendants Sellner, Barberino, and Dionne by failing to adequately train and/or supervise officers of the GRPD regarding proper policy, practice, and procedure resulting in the infringement of Honestie Hodges' constitutional and federal rights, including but not limited to the following:

   a.   Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure for using force toward children/youth citizens;

   b.   Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure with respect to engaging a child/youth citizen;

   c.   Failure to adequately train and/or failure to follow proper policy, practice, and/or procedure for using essential skills in identifying a child/youth citizen who is not a suspect on a particular call; and,

   d.   Otherwise failing to adequately train and/or failing to follow proper policy, practice, and/or procedure resulting in the infringement of Honestie Hodges' constitutional and federal rights.

165. Defendants Grand Rapids and Rahinsky in their supervisory capacity, had the responsibility and authority to investigate the infringement of constitutional and federal rights of its youth citizens and as a matter of acts, custom, policy and/or practice, Defendants failed to adequately and properly investigate the incident involving Honestie Hodges, including but not limited to, failing to perform a thorough investigation into all of the events relating to the death of Honestie Hodges and/or failing to thoroughly review and investigate all policies, practices, procedures and training materials related to the circumstances surrounding the injuries to Honestie Hodges.

166. By these actions and inactions, Defendants as a matter of acts, custom, policy and practice, deprived Honestie Hodges of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

167. As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

**COUNT VI**
**42 U.S.C. § 1983**
**SUBSTANTIVE DUE PROCESS**
**ALL DEFENDANTS**

168. The paragraphs above are incorporated by reference as if fully stated herein.

169. In practice, Defendant City of Grand Rapids has used its officers to bully, harass, traumatize, and deprive African American children and youth citizens of their civil liberties.

170. Defendant City of Grand Rapids used Defendants Sellner, Barberino, and Dionne to interfere with Honestie's property and liberty interests which entitle Honestie the right to bodily integrity.

171. Defendants' conduct, either in their individual or collective acts to this abusive environment, caused Honestie to be detained unlawfully under the color of law grossly depriving her of fundamental liberty interests.

172. Defendants have ignored procedural and substantive Due Process requirements in an unlawful movement to harass, punish, bully, and traumatize children/youth citizens,

especially African American children who are not suspected of serious criminal activities or violations.

173. The municipal Defendants have trained their officers and have implemented a policy of transforming non-serious and simple law enforcement interactions with youth citizens, especially African American youth citizens into invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

174. Defendants' actions intentionally and willfully deprived Honestie of her property and liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing, conduct of Defendants.

175. Defendants' actions proximately caused damages to Honestie as previously and subsequently alleged.

176. Defendants acted willfully, knowingly, and/or purposefully, and with deliberate indifference to deprive Honestie of her constitutional rights.

177. Due to the nature of Defendants' conduct, Honestie is entitled to recover punitive damages against the individual Defendants.

178. As a direct and proximate result of Defendants' actions, Honestie was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

179. As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its

lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

## SUPPLEMENTAL STATE LAW CLAIMS

### COUNT VII
### MICHIGAN CONSTITUTION ARTICLE I, § 11
### FALSE ARREST
### DEFENDANTS SELLNER, BARBERINO, AND DIONNE

180.　The paragraphs above are incorporated by reference as if fully stated herein.

181.　Honestie Hodges had a clearly established right under the Michigan Constitution to be free from unreasonable seizures of her person.

182.　Honestie was detained for no legitimate reason.

183.　Defendants Sellner, Barberino, and Dionne seized and detained Honestie without probable cause or a reasonable suspicion that Honestie was committing or had committed a crime.

184.　Defendants Sellner, Barberino, and Dionne's acts were objectively unreasonable.

185.　On December 6, 2017, Defendants Sellner, Barberino, and Dionne acted in a deliberate, grossly negligent, and/or reckless manner when they pointed their firearm at Honestie (Defendant Sellner), handcuffed Honestie (Defendant Barberino), and seized and detained Honestie (Defendants Barberino and Dionne).

186.　Defendants Sellner, Barberino, and Dionne, in subjecting Honestie to the unlawful seizure, deprived Honestie of her constitutional and federal rights maliciously, acted with callous or reckless disregard, and deliberate indifference as to whether Honestie's rights would be violated by their actions.

187.　As a direct and proximate result of Defendants' actions, Honestie was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

188.    As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

**COUNT VII**
**MICHIGAN CONSTITUTION ARTICLE I, § 17**
**DUE PROCESS**
**ALL DEFENDANTS**

189.     The paragraphs above are incorporated by reference as if fully stated herein.

190.    In practice, Defendant City of Grand Rapids used its officers to bully, harass, traumatize, and deprive African American youth citizens and youth citizens of their civil liberties.

191.    Defendants City of Grand Rapids used Defendants Sellner, Barberino, and Dionne to interfere with Honestie's property and liberty interests, which entitles Honestie to the right to bodily integrity.

192.    Defendants' conduct, either in their individual or collective acts to this abusive environment, caused Honestie to be detained unlawfully under the color of law grossly depriving her of fundamental liberty interests.

193.    Defendants have ignored procedural and substantive Due Process requirements in an unlawful campaign to harass, punish, and bully youth citizens, especially African American youth citizens who are not suspected of serious criminal activities or violations.

194.    The municipal Defendants have trained their officers and have implemented a policy of transforming non-serious and simple law enforcement interactions with youth citizens,

especially African American youth citizens into invasive searches and seizures, flouting constitutional requirements related to private property and liberty interests.

195.   Defendants' actions intentionally and willfully deprived Honestie of her property and liberty interests without due process of law and without recourse for the arbitrary, abusive, and harassing, conduct of Defendants.

196.   Defendants' actions proximately caused damages to Honestie as previously and subsequently alleged.

197.   Defendants acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Honestie of her constitutional rights.

198.   Due to the nature of Defendants' conduct, Honestie is entitled to recover punitive damages against the individual Defendants.

199.   As a direct and proximate result of Defendants' actions, Honestie was deprived of rights, privileges, and immunities under the Fourth and Fourteenth Amendments of the United States Constitution and the laws and Constitution of the State of Michigan.

200.   As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

### COUNT VIII
### GOVERNMENTAL LIABILITY - NEGLIGENCE
### DEFENDANTS SELLNER, BARBERINO, DIONNE

201.   The paragraphs above are incorporated by reference as if fully stated herein.

202.  At all relevant times, Defendants Sellner, Barberino, and Dionne were acting in the course of their employment.

203.  Defendants Sellner, Barberino, and Dionne owed a general duty to use due care while interacting with Honestie Hodges.

204.  Duties owed to Honestie Hodges include but are not limited to:

    a.  The duty to use verbal means such as advice, warning, or persuasion intended to deescalate the situation before resorting to force;

    b.  The duty to refrain from using force in where force was not necessary;

    c.  The duty to exhaust all reasonable alternatives before using force;

    d.  The duty to use only such force as was necessary and reasonable under the circumstances;

    e.  The duty to exercise restraint in difficult situations involving children/youth citizens and to analyze the situation and react in a professional manner;

    f.  The duty to use no force or the least restrictive amounts of force available as well as de-escalation techniques and methods toward children/youth citizens; and,

    g.  Other related duties to be identified.

205.  Defendants violated that duty in the following manners:

    a.  Handcuffing Honestie Hodges though she did not fit the description of the criminal suspect, was not armed, was not fleeing the scene, and was not otherwise resisting the officers in any manner;

    b.  Pointing firearms (with lasers) at Honestie;

    c.  Detaining Honestie Hodges in a police cruiser for approximately 10 minutes;

    d.  Questioning Honestie Hodges outside of the presence of her parents/guardians;

    e.  Using force against Honestie Hodges, an 11-year old child/youth citizen;

    f.  Failing to use skills to deescalate the emotional trauma inflicted upon a youth citizen who is not a suspect on a particular call; and,

    g.  Otherwise failing to execute proper policies, practices and/or procedures that resulted in the infringement of Honestie Hodges' constitutional and federal rights.

206.    Defendants Sellner, Barberino, and Dionne committed acts of gross negligence including but not limited to, pointed their firearm at Honestie (Defendant Sellner), handcuffed Honestie (Defendant Barberino), and seized and detained Honestie (Defendants Barberino and Dionne).

207.    The aforementioned acts, carried out in the absence of probable cause or reasonable suspicion that a crime was being or had been committed, were so reckless as to demonstrate a substantial lack of concern whether an injury would result to Honestie.

208.    Defendants breached the duties owed to Honestie Hodges and were grossly negligent as that term is used and defined in M.C.L. 691.1407(2) (c) (the Governmental Tort Liability Act or "GTLA"), when they conducted themselves by actions and inactions described above, said acts and omissions having been committed with reckless and willful disregard for Honestie's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

209.    Defendants Sellner, Barberino, and Dionne are not afforded the protections of governmental immunity under MCL 691.1407 *et seq*. as their actions and inactions as described in detail above constituted gross negligence under the GTLA.

210.    As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

211.   Defendants are liable for the aforementioned injuries under MCL 691.1407(2) and Michigan law.

## <u>COUNT IX</u>
### <u>ASSAULT & BATTERY</u>
### <u>DEFENDANTS SELLNER, BARBERINO, AND DIONNE</u>

212.   The paragraphs above are incorporated by reference as if fully stated herein.

213.   Defendants Sellner, Barberino, and Dionne committed, or acted in concert to commit, acts which caused Honestie Hodges to be apprehensive that Defendants would subject her to an imminent battery and intentional invasions of her rights to be free from offensive and harmful contact.

214.   Said conduct by Defendants Sellner, Barberino, and Dionne demonstrated that the Defendants had a present ability to subject Honestie Hodges to an immediate, intentional, offensive and harmful touching. Honestie Hodges did not consent to such conduct, which caused injury, damage, loss, and/or harm.

215.   Defendants Sellner, Barberino, and Dionne for the very purpose of causing harm, and in an extreme, outrageous and reckless manner physically engaged Honestie Hodges in a manner that escalated physical interaction and use of handcuffs on Honestie.

216.   Use of handcuffs resulted in injury to Honestie.

217.   The acts described above constitute assault and battery, actionable under the laws of the State of Michigan.

218.   Defendants committed, or acted in concert to commit, acts that resulted in harmful or offensive contact with the body of Honestie Hodges.

219.   Honestie Hodges did not consent to the contact, which caused injury, damage, loss, and/or harm.

220.   As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

### COUNT X
### FALSE IMPRISONMENT
### DEFENDANTS SELLNER, BARBERINO, AND DIONNE

221.   The paragraphs above are incorporated by reference as if fully stated herein.

222.   Defendant Sellner engaged in the unlawful restraint of Honestie Hodges' liberty and freedom of movement by detaining her at gunpoint.

223.   Defendant Barberino engaged in the unlawful restraint of Honestie Hodges' liberty and freedom of movement by handcuffing her.

224.   Defendant Dionne engaged in the unlawful restraint of Honestie Hodges' liberty and freedom of movement by placing her in a police car.

225.   The aforementioned Defendants thereby engaged in these restraints with both express and implied physical force.

226.   As a direct and proximate result of Defendants' actions and/or inactions, Honestie Hodges suffered mental anguish, anxiety, fright, shock, embarrassment, humiliation, mortification, psychological and emotional distress, and physical pain and suffering, and it is believed that her diminished emotional and physical condition as a result of the trauma she endured and its lasting effects led to the weakening of her body and made her more susceptible to complications from illness that contributed to and ultimately caused her death.

## DAMAGES AND RELIEF REQUESTED

227.  The paragraphs above are incorporated by reference as if fully stated herein.

228.  As a direct and proximate result of Defendants Grand Rapids, Rahinsky, Sellner, Barberino, and Dionne's actions and/or inactions stated above, Honestie Hodges suffered serious mental anguish, anxiety, emotional distress, a sense of outrage, loss of social pleasure and enjoyment and death.

229.  The conduct, actions and/or inactions of Defendants as alleged in the above-stated counts and causes of action constitute violations of the common and/or statutory laws of the State of Michigan, and the United States District Court has supplemental jurisdiction to hear and adjudicate said claims.

230.  Plaintiff, on behalf of the estate and all individuals entitled to damages under the wrongful death act, request all damages that are fair and just under the circumstances, including, without limitation, the following:

   a.  Reasonable hospital, medical and/or funeral expenses;

   b.  Reasonable compensation for pain and suffering Honestie experienced while she was unlawfully detained and thereafter; and,

   c.  Losses suffered by Plaintiff and Honestie's next of kin as a result of Honestie's death, including but not limited to the following:

      i.  Loss of society and companionship; and,

      ii.  Other losses.

WHEREFORE, Plaintiff Whitney Hodges, Personal Representative of the Estate of Honestie Hodges, requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor and against Defendants Grand Rapids, Rahinsky, Sellner, Barberino, and Dionne on all counts as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity and fact for each or all of the above counts where

applicable and requests that the trier of fact, be it judge or jury, award Plaintiff all applicable

damages, including but not limited to compensatory, special, exemplary and/or punitive, in

whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity and fact,

also including but not limited to:

a.  Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, mental anguish, anxiety, pain and suffering violation of Honestie Hodges' Constitutional rights, loss of social pleasure and enjoyment, and other damages to be proved;

b.  Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c.  Reasonable attorney fees, interest and costs; and,

d.  Other equitable and/or injunctive relief as appears to be reasonable and just.

Respectfully submitted,

Dated: November 22, 2023                 By:    /s/ Stephen R. Drew
                                                Stephen R. Drew (P24323)
                                                Adam C. Sturdivant (P72285)
                                                DREW COOPER & ANDING
                                                *Attorneys for Plaintiff*
                                                *Whitney Hodges, Personal Representative of*
                                                *the Estate of Honestie Hodges*
                                                80 Ottawa Avenue NW, Suite 200
                                                Grand Rapids, Michigan 49503
                                                Phone: (616) 454-8300
                                                E-mail: sdrew@dca-lawyers.com
                                                E-mail: asturdivant@dca-lawyers.com

## **JURY DEMAND**

Plaintiff Whitney Hodges, Personal Representative of the Estate of Honestie Hodges, by and through her attorneys, DREW COOPER & ANDING, hereby demands a trial by jury on all claims set forth above.

Respectfully submitted,

Dated: November 22, 2023    By:    /s/ Stephen R. Drew

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
*Attorneys for Plaintiff*
*Whitney Hodges, Personal Representative of*
*the Estate of Honestie Hodges*
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com