**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION**

WHITNEY HODGES,
as Personal Representative of the
ESTATE OF HONESTIE HODGES,

Plaintiff,

v.

CITY OF GRAND RAPIDS;
OFFICER SPENCER SELLNER
(individual and official capacity);
OFFICER ANTHONY BARBERINO
(individual and official capacity); and,
OFFICER JEFFREY DIONNE
(individual and official capacity),

Defendants.

Case No. 1:23-cv-01230-HYJ-SJB

Honorable Hala Y. Jarbou

_____________________________________________/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
*Attorneys for Plaintiff*
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

Elizabeth J. Fossel (P41430)
Sarah J. Hartman (P71458)
City of Grand Rapids Law Department
*Attorney for Defendants City of Grand Rapids, Spencer Sellner, Anthony Barberino, and Jeffrey Dionne*
300 Monroe Avenue NW, Suite 620
Grand Rapids, Michigan 49503
Phone: (616) 456-3099
E-mail: efossel@grand-rapids.mi.us
E-mail: shartman@grand-rapids.mi.us

_____________________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... iv

I. INTRODUCTION ..... 1

II. STANDARDS GOVERNING A RULE 12(b)(6) MOTION TO DISMISS ..... 2

A. Several of Defendants' exhibits are extraneous to the Complaint and go beyond what is permissible under a 12(b)(6) Motion to Dismiss analysis and thus should be stricken and not considered by the Court ..... 4

B. Summary Judgment standards are inappropriate to determine a 12(b)(6) Motion to Dismiss ..... 6

III. PROCEDURAL HISTORY AND RELEVANT TIMELINE ..... 8

IV. ARGUMENT ..... 9

A. The Qualified Immunity Doctrine and its limitations ..... 10

B. Count I - 42 U.S.C. § 1983 - Unreasonable Search and Seizure: Plaintiff sufficiently pleaded that Defendants Sellner, Barberino, and Dionne unlawfully violated Honestie Hodges' constitutional right to be free from an unreasonable search and seizure ..... 10

C. Count II - 42 U.S.C. § 1983 - False Arrest/False Imprisonment: The facts in Plaintiff's Complaint allege that Defendants Barberino and Dionne's detainment of Honestie was unreasonable as they lacked reasonable suspicion or probable cause that Honestie had committed a crime ..... 14

D. Count III - 42 U.S.C. § 1983 - Excessive Force: Plaintiff pleaded facts to establish that Defendants Sellner and Barberino's use of force was excessive and unreasonable ..... 16

1. Consistent with Sixth Circuit precedent, the drawing of guns is excessive force under the circumstances alleged in Plaintiff's Complaint as Defendant Sellner violated Honestie's clearly established rights by pointing his gun at Honestie, who was unarmed, did not pose any threat to Defendant Sellner (or herself, or anyone else), complied with all of Defendant Sellner's demands, and did not resist or attempt to flee ..... 17

2. Handcuffing an individual who is not resisting and who poses no immediate threat constitutes excessive force ..... 18

a. Defendant Barberino violated Honestie's clearly established rights by handcuffing her ....................................................................19

b. Defendant Dionne violated Honestie's clearly established rights by continuing the use of handcuffs with an 11-year-old child who posed no risk given that she was unarmed and clearly not the suspect whom GRPD was searching for ..........................................................20

E. Count IV - 42 U.S.C. § 1983 Municipal Liability and Count V - 42 U.S.C. § 1983 - Failure to Train and Supervise: Plaintiff's has pleaded that Defendant City of Grand Rapids' lack of policy and inadequate training of its officers was the moving force behind the violation of Honestie's clearly established constitutional rights 21

F. Count VI - 42 U.S.C. § 1983 - Substantive Due Process: Plaintiff sufficiently pleaded facts establishing Honestie's fundamental right to personal security and bodily integrity...........................................................................................28

G. Count VII - Michigan Constitution Article I, § 11 - False Arrest and Count VIII - Michigan Constitution Article I, § 17 - Due Process: Plaintiff's Complaint requested injunctive relief based on Defendants Sellner, Barberino, and Dionne's violations of Honestie's state constitutional rights .............................................29

H. Count IX - Governmental Liability Negligence: Plaintiff's Complaint alleged that Defendants Sellner, Barberino, and Dionne's acts were reckless and demonstrated a lack of concern for whether Honestie would be injured; thus, they should not be afforded immunity under the GTLA ..................................................................30

I. Plaintiff's state law Assault and Battery and False Imprisonment claims were timely filed pursuant to Michigan's savings statute .......................................................33

J. Count X - Assault & Battery: Facts were alleged that Defendants Sellner, Dionne, and Barberino's unreasonable acts created a reasonable apprehension of an offensive touching or harm......................................................................34

K. Count XI - False Imprisonment: Facts were alleged that Defendants Barberino and Dionne's detainment of Honestie was unreasonable as they lacked reasonable suspicion or probable cause that she had committed a crime..............................37

L. Official Capacity claims against Defendants Sellner, Barbarino, and Dionne should not be dismissed as the categorization preserves Plaintiff's right to assert that the public entity pay damages caused by the individual officers ...............................38

V. CONCLUSION AND RELIEF REQUESTED ..................................................40

INDEX OF EXHIBITS ..........................................................................................41

CERTIFICATE OF SERVICE ........................................................................................ 42

**TABLE OF AUTHORITIES**

**Cases**

*Akima v. Peca*,
85 F.4th 416 (6th Cir. 2023) ....5

*Akima v. Peca*,
652 F. Supp. 3d 848 (E.D. Mich.) ....15

*Albright v. Oliver*,
510 U.S. 266 (1994) ....11

*Al-Lamadani v. Lang*,
624 F. App'x. 405 (6th Cir. 2015) ....18, 19

*Anderson v. Creighton*,
483 U.S. 635, 107 S. Ct. 3034 (1987) ....11

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....3

*Back v. Hall*,
537 F.3d 552 (6th Cir. 2008) ....4

*Bailey v. United States*,
568 U.S. 186, 133 S. Ct. 1031, 185 L. Ed. 2d 19 (2013) ....14

*Baskin v. Smith*,
50 F. App'x 731 (6th Cir. 2002) ....16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ....3

*Bell v. City of Southfield*,
37 F.4th 362 (6th Cir. 2022) ....5

*Bell v. Porter*,
739 F. Supp. 2d 1005 (W.D. Mich. 2010) ....34, 35

*Bennett v. City of Eastpointe*,
410 F.3d 810 (6th Cir.2005) ....19

*Bickerstaff v. Lucarelli*,
830 F.3d 388 (6th Cir. 2016) ....3

*Binay v. Bettendorf*,
601 F.3d 640 (6th Cir. 2010)....................17, 18

*Blase v. Appicelli*,
195 Mich.App. 174, 489 N.W.2d 129 (1992)....................37

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*,
901 F.3d 656 (6th Cir. 2018).................... 30

*Brown v. City of Wyoming*,
658 F. Supp. 3d 546 (W.D. Mich. 2023).................... 7, 17

*Brown v. Lewis*,
779 F.3d 401 (6th Cir.2015)....................19

*Campbell v. City of Springboro Ohio*,
700 F.3d 779 (6th Cir. 2012)....................10, 16

*Carey v. Helton*,
70 F. App'x 291 (6th Cir. 2003)....................21

*City of Canton v. Harris*,
489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d. 412 (1989).................... 22, 23

*Courtright v. City of Battle Creek*,
839 F.3d 513 (6th Cir. 2016)....................4

*Cummings v. City of Akron*,
418 F.3d 676 (6th Cir. 2005)....................11

*Davis v. Mississippi*,
394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969)....................14

*Davis v. Pickell*,
939 F. Supp. 2d 771 (E.D. Mich. 2013)....................10

*Dickerson v. McClellan*,
101 F.3d 1151 (6th Cir. 1996)....................16

*Doe v. Claiborne Cnty.*,
103 F.3d 495 (6th Cir. 1996)....................21, 28

*Feathers v. Aey*,
319 F.3d 843 (6th Cir. 2003)....................11

*Gaddis v. Redford Twp.*,
364 F.3d 763 (6th Cir. 2004)....................16

*Gambrel v. Knox County, Kentucky*,
25 F.4th 391 (6th Cir. 2022)....................27

*Gould v. Symons*,
275 F. Supp. 2d 843 (E.D. Mich. 2003)....................12

*Graham v. Connor*,
490 U.S. 386, 109 S. Ct. 1865; 104 L. Ed. 2d 443 (1989)....................11, 12

*Grawey v. Drury*,
567 F.3d 302 (6th Cir. 2009)....................34

*Greenberg v. Life Ins. Co. of Va.*,
177 F.3d 507 (6th Cir. 1999)....................6

*Gregory v. Shelby County, Tenn.*,
220 F.3d 433 (6th Cir. 2000)....................11

*Hafer v. Melo*,
502 U.S. 21 (1991)....................39

*Harlow v. Fitzgerald*,
457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)....................10

*HDC, LLC v. City of Ann Arbor*,
675 F.3d 608 (6th Cir. 2012)....................3

*Heyerman v. Cty. of Calhoun*
680 F.3d 642 (6th Cir. 2012)....................24

*Heyne v. Metro. Nashville Pub. Sch.*,
655 F.3d 556 (6th Cir. 2011)....................4

*Hope v. Pelzer*,
536 U.S. 730, 122 S. Ct. 2508 (2002)....................11, 12

*Illinois v. Gates*,
462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)....................38

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014)....................4

*Ingram v. City of Columbus*,
185 F.3d 579 (6th Cir. 1999)....................16

*Johnson v. Moseley*,
790 F.3d 649 (6th Cir. 2015)....................4

*Jones v. Powell*,
612 N.W.2d 423 (Mich. 2000)....................30

*Kallstrom v. City of Columbus*,
136 F.3d 1055 (6th Cir. 1998)....................28

*Mays v. Snyder*,
323 Mich. App. 1....................29

*Mettler Walloon LLC v Melrose Twp*,
281 Mich. App. 184, 761 N.W.2d 293 (2008)....................29

*Michigan v. DeFillippo*,
443 U.S. 31, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979)....................38

*Miller v. Sanilac Cty.*,
606 F.3d 240 (6th Cir. 2010)....................35

*Mills v. Owsley Cnty. Kentucky*,
483 F. Supp. 3d 435 (E.D. Ky. 2020)....................24

*Monell v. Department of Social Services*,
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).................... 7, 21, 27

*Moore v. Michigan Nat'l Bank*,
368 Mich. 71, 117 N.W.2d 105 (1962)....................37

*Morrison v. Bd. of Trs.*,
583 F.3d 394 (6th Cir. 2009)....................7,16

*Neitzke v. Williams*,
490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)....................3

*Odom v. Wayne County*,
482 Mich. 459, 760 N.W.2d 217 (2008)....................15, 35

*Ouza v. City of Dearborn Heights, Michigan*,
969 F.3d 265 (6th Cir. 2020)....................27

*Parsons v. City of Pontiac*,
533 F. 3d 492 (6th Cir. 2008)....................10, 16

*Payton v. New York*,
445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)....................12

*Pearson v. Callahan*,
555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)....................10

*People v. Nickens*,
470 Mich. 622 (2004)....................34

*Peterson Novelties, Inc. v. City of Berkley*,
259 Mich. App. 1, 672 N.W.2d 351 (2003).................... 15

*Pray v. City of Sandusky*,
49 F.3d 1154 (6th Cir. 1995)....................12

*Rideout v. Shelby Twp*.,
--- F. Supp. 3d ----, 2023 WL 5917392 (E.D. Mich. Sept. 11, 2023).................... 3, 4

*Roth Steel Prods. v. Sharon Steel Corp.*,
705 F.2d 134 (6th Cir. 1983)....................5

*Russo v. City of Cincinnati*,
953 F.2d 1036 (6th Cir. 1992)....................11

*Saltmarshall v. Prime Healthcare Servs.-Garden City LLC*,
831 F. App'x 764 (6th Cir. 2020)....................14, 15

*Saucier v. Katz*,
533 U.S. 194 (2001)....................10, 11

*Scott v. Harris*,
550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)....................10

*Stemler v. City of Florence*,
126 F.3d 856 (6th Cir. 1997)....................12

*Streeter v. Macomb County*,
2023 WL 1784745 (E.D. Mich. Feb. 6, 2023)....................31

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).................... 3

*Sykes v. Anderson*,
625 F.3d 294 (6th Cir. 2010)....15

*Tarlea v. Crabtree*,
263 Mich. App. 80 (2004)....31

*Thomas v. City of Chattanooga*,
398 F.3d 426 (6th Cir. 2005)....21

*Tope v. Howe*,
179 Mich.App. 91, 445 N.W.2d 452 (1989)....37, 38

*United States v. Barkovitz*,
29 F. Supp. 411 (E.D. Mich. 1998)....35, 36

*United States v. Bolden*,
479 F.3d 455 (6th Cir. 2007)....17, 18

*United States v. Lanier*,
520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)....11, 12

*United States v. Mendenhall*,
446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).... 14

*United States v. Radka*,
904 F.2d 357 (6th Cir.1990)....12

*United States v. SouthEast Eye Specialists*, PLLC,
570 F. Supp. 3d 561 (M.D. Tenn. 2021)....3

*United States v. Strickland*,
144 F.3d 412 (6th Cir.1998)....38

*Vanderhoef v. Dixon*,
938 F.3d 271 (6th Cir. 2019)....17

*VanVorous v. Burmeister*,
262 Mich.App. 467, 687 N.W.2d 232 (2004)....35

*Victor v. Reynolds*,
582 F. Supp.3d 516 (E.D. Mich. 2022)....24

*Wallace v. Kato*,
549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007)....15

*Wesley v. Campbell*,
779 F.3d 421 (6th Cir. 2015)....4

*Wilson v. Layne*,
526 U.S. 603, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999)....11

*Wright v. City of Euclid*,
962 F.3d 852 (6th Cir. 2020)....17

**Statutes**

42 U.S.C. § 1983....*Passim*

M.C.L. § 600.5852 (1)....9, 33

M.C.L. § 600.5852 (4)....9

M.C.L. § 691.1407(2) ....31

M.C.L. § 691.1407(7)(a) ....31

M.C.L. § 600.5851(1) ....34

MICH. CONST. Art. XI, § 5 ....30

MICH. CONST. Art. I, § 11....9, 29

MICH. CONST. Art. I, § 17....9, 29, 30

U.S. Const. amend. IV....11 12

**Rules**

Fed. R. Civ. P. 8....2, 3

Fed. R. Civ. P. 12(b)(6)....*Passim*

Fed. R. Civ. P. 12(c)....7

Fed. R. Civ. P. 12(d) ....5, 6

Fed. R. Civ. P. 15....2, 9, 14, 20, 40

Fed. R. Civ. P. 56....6, 7

**Secondary Sources**

11 James Wm. Moore's Federal Practice § 56.30(4) (3d ed.1998) ............................................ 15

## I. INTRODUCTION

Honestie Hodges, an 11-year-old girl, was held at gunpoint, handcuffed, and detained while attempting to leave her house to walk to a nearby store with a family friend. As Honestie exited the backdoor of her home, she was approached by multiple GRPD police officers who, unbeknownst to her, had surrounded her house with guns drawn and began yelling commands. The officers were allegedly searching for an adult suspect who may have been involved in a domestic dispute at another location. But…the officers were at the *wrong house*. And in real-time, the officers knew that, at a minimum, this young child was not who they were looking for. Plaintiff (Honestie's mother) pleaded with police over and over again that she was a child. Honestie Hodges did not match the description of the suspect—not by a long shot. This elementary-aged girl was unarmed, was not fleeing or obstructing the officers, posed no threat to anyone, and was cooperating with officers despite being terrified, traumatized, and disoriented. While fighting through tears, she was fearful that she may be inadvertently or intentionally hurt or killed.

Defendants filed a Motion to Dismiss at the earliest possible stage of this case, arguing that in her Complaint, Plaintiff has failed to state a claim upon which relief could be granted against the individual officers and the municipality that trained them. Viewing the Complaint in a light most favorable to the Plaintiff and taking all well-pleaded factual allegations as true, this is not even remotely accurate. As required by law, Plaintiff has properly pleaded counts against the City of Grand Rapids and Officers Sellner, Baberino, and Dionne in their individual capacities.

The trick that many defendants often attempt to play in cases of this nature is persuading the court to impose summary judgment standards to a 12(b)(6) motion on the pleadings, ultimately requiring plaintiffs to plead and provide more evidence than is required at the pleading stage. Contrary to controlling law, Defendants are, in essence, demanding that Plaintiff allege a level of

factual specificity within the confines of her Complaint that is the equivalent to a summary judgment brief typically filed and decided once the evidentiary record has been established. However, there is no heightened pleading standard for any of the claims Plaintiff has presented before this Court. There is also no requirement under federal or state law that Plaintiff develop evidence **before** litigation and then plead that evidence in order for the Complaint to be deemed properly pleaded. Defendants 12(b)(6) motion should be decided on the pleadings alone, and Plaintiff's Complaint provides ample notice and presents facts that give rise to claims that are plausible.

To support their argument that qualified immunity should be afforded at the pleadings stage of this litigation, Defendants argue that the video evidence is uncontroverted. PageID.78, fn. 7. Plaintiff disagrees. However, viewing the police bodycam videos from the varying vantage points of multiple officers at the scene that night in a light most favorable to the Plaintiff, *it is uncontroverted that*—as pleaded—Honestie Hodges was unlawfully seized, wrongfully detained, and was handcuffed without reasonable suspicion or probable cause under the circumstances. And thus, qualified immunity must be denied.

For the reasons set forth more fully below, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied in its entirety as Plaintiff has pleaded sufficiently. If this Court determines that a certain Count should be dismissed, however, the proper remedy, pursuant to FRCP 15, is for the Court to allow Plaintiff to file an amended complaint. In the interest of justice, Plaintiff would respectfully request permission to do so.

## II. STANDARDS GOVERNING A RULE 12(b)(6) MOTION TO DISMISS

To show grounds for relief, Federal Rule of Civil Procedure 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a). Rule 8 does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To survive a motion to dismiss, detailed factual allegations are not required. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012). For purposes of Defendants' Motions to Dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff, and (2) take all well-pleaded factual allegations as true. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). A claim has facial plausibility when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. Plausible does not mean probable, but the standard "asks for more than a sheer possibility that a defendant has acted unlawfully .... Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

> In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id.* at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether " 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists*, PLLC, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Exhibit 1, *Rideout v. Shelby Twp.*, --- F. Supp. 3d ----, No. 22-11597, 2023 WL 5917392, at *2 (E.D. Mich. Sept. 11, 2023).

Thus, while certain allegations may need to be substantiated to survive a motion for summary judgment, the same allegations may be sufficient to survive a motion to dismiss. *See Rideout*, 2023 WL 5917392, at *3. "No heightened pleading requirement applies" to a court's review of a motion to dismiss based on qualified immunity. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011); *see also Back v. Hall*, 537 F.3d 552, 555–56 (6th Cir. 2008). The Sixth Circuit has noted:

> Although "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery," *Johnson*, 790 F.3d at 653, **we also have cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity**." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). We clarified, "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id*. at 433–34 (internal marks and citations omitted).

*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)(emphasis added).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. "Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). The Sixth Circuit has followed *Omnicare* and allowed incorporation of some documents, but not documents that are "extraneous or evidentiary material that should not be attached to the pleadings." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014).

A. Several of Defendants' exhibits are extraneous to the Complaint and go beyond what is permissible under a 12(b)(6) Motion to Dismiss analysis and thus should be stricken and not considered by the Court.

Defendants attached nine exhibits to their Motion to Dismiss. None of those exhibits were attached to Plaintiff's Complaint. Several of Defendants' exhibits are improper. Although, arguably, the exhibits may technically qualify as "public records," they have not been subject to

cross-examination and could contain inaccurate, misleading, or flat-out wrong information. To permit these exhibits at this point in the proceedings, before conducting any discovery whatsoever, would be improper. Plaintiff would suffer extreme prejudice if not given a reasonable opportunity to present all pertinent material. *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir. 1983); *see also* Fed. R. Civ. P. 12(d).

Specifically, Plaintiff requests that Defendants' Exhibit A (the CAD report) and C (the Incident Report) be stricken from the record as they are not the type of public records that are permissible for consideration at the Motion to Dismiss stage. Plaintiff did not reference the CAD Report or the Incident Report in her Complaint. Thus, Plaintiff did not rely on either "public record" in her allegations. In fact, Plaintiff did not attach any exhibits to her Complaint. If the Court considers any of Defendants' extraneous evidence in its ruling on Defendants' Motion to Dismiss, Plaintiff respectfully requests that the Court first determine whether the evidence is "referred to in the complaint and is central to the plaintiff's claim." 11 James Wm. Moore's Federal Practice § 56.30(4) (3d ed.1998).

With regard to body-cam footage, Plaintiff referenced one statement made by Defendant Barbarino as captured by his body-cam video (PageID.10, fn. 2) and also noted that the Former Chief of Police, David Rahinsky, described the videos as "disturbing" (PageID.12, ¶102a). The Sixth Circuit has indicated that at the motion to dismiss stage, the Court may, "rely on the videos over the complaint" only "to the degree the videos are clear and 'blatantly contradict' or 'utterly discredit' the plaintiff's version of events." *Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023) quoting *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (brackets and citations omitted). Consequently, because these documents are not referenced in Plaintiff's Complaint, nor does she rely on them as being central to her claim, they should be stricken from the record, and this Court

should not consider them when deciding Defendants' motion on the pleadings. *Cf. Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). Additionally, Exhibit I contains an opinion of this Court that is currently on appeal before the Sixth Circuit, has not been fully briefed, and has not been decided. It is not controlling law.

Thus, Plaintiff respectfully requests that this Court strike Defendants Exhibits A and C from the record and completely disregard the information within the exhibits, as well as any summaries of or references to the exhibits throughout Defendants' Brief in Support of the Motion to Dismiss.

If this Court elects to consider Exhibits A and C, Plaintiff requests that any ruling on Defendants' Motion to Dismiss be held in abeyance while Plaintiff is afforded the opportunity to conduct discovery, cross-examine witnesses who created Exhibits A and C, cross-examine witnesses identified within those exhibits, and present other deposition testimony, documents, ESI, affidavits or declarations, stipulations, admissions, interrogatory answers or other relevant materials. *See* Fed. R. Civ. P. 12(d), Fed. R. Civ. P. 56.

Finally, as the Court is assessing the facts alleged in Defendants' brief, it is important to note that almost the entirety of Defendants' recitation of the "facts" is not drawn from Plaintiff's Complaint. *See* PageID.76-82; *cf.* PageID.4-13. Instead, they are taken from the videos Defendants attached as exhibits to their Motion, and they are described from a light most favorable to Defendants, as well as other extraneous materials.

B. Summary Judgment standards are inappropriate to determine a 12(b)(6) Motion to Dismiss.

It cannot be stressed strongly enough that while Defendants filed a Rule 12(b)(6) motion, their Brief cites and relies upon several cases imposing Rule 56 summary judgment standards and analyses that should not be applied to a Rule 12(b)(6) motion and should not be used to evaluate the sufficiency of a plaintiff's pleading.

For example, Defendants' Brief cites and relies upon multiple cases decided at the summary judgment phase of litigation:

- *Gordon v. Louisville/Jefferson:* discusses a district court's grant of summary judgment and does not examine the pleadings.
- *Brown v. City of Wyoming:* invoked Rule 12(b)(6), Rule 12(c), and Rule 56 standards, and the district court ruled on summary judgment/Rule 56.
- *Puskas v. Delaware County*, *Ohio:* the Sixth Circuit reviewed a district court's decision to grant summary judgment pursuant to Rule 56.[1]
- *Smith v. City of Troy, Ohio*: the Sixth Circuit reviewed a district court's decision to grant summary judgment pursuant to Rule 56.
- *Morrison v. Board of Trustees Of Green Tp.*: The Sixth Circuit reviewed a district court's decision to partially deny summary judgment pursuant to Rule 56.
- *White v. Pauly*: The Supreme Court of the United States reviewed an order denying an officer's motion for summary judgment pursuant to Rule 56 that was affirmed by an appellate court.
- *Mitchell v. Forsyth*: The Supreme Court of the United States reviewed denials of cross-motion summary judgment pursuant to Rule 56 that were affirmed by an appellate court.

None of the cases listed above were decided on Rule 12(b)(6) motions on the pleadings. While Plaintiff will not highlight each case that invokes summary judgment standards in Defendants' supporting brief, imposing summary judgment standards upon a non-moving party at the pleadings stage is improper and bypasses a critical stage of the litigation process — discovery. A plaintiff should not be forced to litigate her entire case based only on allegations and information contained in a notice pleading (*i.e.*, a short and plain statement of the claim), which is the standard promulgated by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(a).

---

[1] In *Puskas,* the Sixth Circuit included one very short paragraph regarding the lower court's decision to dismiss the plaintiff's *Monell* claim pursuant to Rule 12(b)(6). There was no detailed analysis provided by the court.

## III. PROCEDURAL HISTORY AND RELEVANT TIMELINE

On December 6, 2017, GRPD officers were searching for an adult Caucasian woman who had allegedly stabbed another individual. PageID.9, ¶78. The suspect was described as wearing her hair in a ponytail bun and wearing a black coat. PageID.9, ¶79. In searching for the suspect, GRPD officers descended on Plaintiff and Honestie Hodges' home, though it is believed that the initial call involving the alleged stabbing was unrelated to Plaintiff, Honestie, or any of the occupants of their residence. PageID.1, ¶2.

As Honestie and a family friend exited the residence to go to a store, they were met by GRPD officers who were advancing with guns drawn. PageID.2, ¶¶1, 8; PageID.3, ¶9; PageID.7, ¶¶50-53; PageID.17, ¶144. Officers began yelling commands, held Honestie at gunpoint, handcuffed her, and detained her in a police cruiser. PageID.7, ¶¶50, 52; PageID.8, ¶¶56-63; PageID.9, ¶¶71-77. PageID.15, ¶¶119, 124; PageID.16, ¶139, PageID.17, ¶140-143. Critically important, Honestie did not match the description of GRPD's suspect, as she was African American, 11 years old, and was not wearing her hair in a ponytail bun. PageID.2, ¶3; PageID.9, ¶¶78-82. Additionally, although Honestie had guns drawn on her, was handcuffed, and placed in a police cruiser, and although she was terrified and crying, she cooperated throughout the entire ordeal, posed no immediate threat to the officers or anyone else on site, and did not resist arrest or attempt to flee. *See* PageID.2, ¶¶ 1, 6, 7,8; PageID.7, ¶¶ 50, 52, 53; PageID.8, ¶67, PageID.10, ¶83, PageID.13, ¶109, PageID.14, ¶114; PageID.15, ¶¶121-123; PageID.17, ¶141, 143, 144; PageID.27, ¶205.a; PageID.30, ¶222. Plaintiff incorporates by reference all other factual allegations contained in her Complaint. PageID.1-33.

Tragically, at the very young age of 14 years old, Honestie died on November 22, 2020, of complications from COVID-19. PageID.3, ¶12.

Plaintiff was appointed Personal Representative of the Estate of Honestie Hodges on November 22, 2022. PageID.5, ¶28.[2] Plaintiff's lawsuit was filed on November 22, 2023, which was within two years of the appointment of the Estate's Personal Representative pursuant to Michigan's Savings Statute. *See* M.C.L. §§ 600.5852 (1) and (4).

IV. ARGUMENT

Because Defendants seek to dismiss Plaintiff's entire Complaint, from an organizational standpoint, and to simply and efficiently present Plaintiff's arguments to the Court, Plaintiff is discussing each claim in the order presented in her Complaint. Also, Plaintiff notes that there are typographical errors in the headings of Plaintiff's Counts. To aid the process and the Court's discussion, Plaintiff's headings should be stylized as follows, and Plaintiff, in the interest of justice, respectfully requests the opportunity to amend her Complaint pursuant to FRCP 15 to correct these errors:

- Count I - 42 U.S.C. § 1983 - Unreasonable Search and Seizure (Sellner, Barberino, Dionne)
- Count II - 42 U.S.C. § 1983 - False Arrest/False Imprisonment (Barberino, Dionne)
- Count III - 42 U.S.C. § 1983 - Excessive Force (Sellner/Barberino)
- Count IV - 42 U.S.C. § 1983 Municipal Liability (City of Grand Rapids)
- Count V - 42 U.S.C. § 1983 - Failure to Train and Supervise (City of Grand Rapids)
- Count VI - 42 U.S.C. § 1983 - Substantive Due Process (All Defendants)
- Count VII - Michigan Constitution Article I, § 11 - False Arrest (Sellner, Barberino, Dionne)
- Count VIII - Michigan Constitution Article I, § 17 - Due Process (Sellner, Barberino, Dionne)

---

[2] Should the Court so require, copies of Plaintiff's Letters of Authority issued by the Kent County Probate Court can be made available.

- Count IX - Governmental Liability Negligence (Sellner, Barberino, Dionne)
- Count X - Assault & Battery (Sellner, Barberino, Dionne)
- Count XI - False Imprisonment (Sellner, Barberino, Dionne)

A. The Qualified Immunity Doctrine and its limitations

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). A two-step analysis is used: (1) viewing the facts in the light most favorable to the plaintiff to determine whether the allegations give rise to a constitutional violation; and, (2) assessing whether the right was clearly established at the time of the incident. *Pearson*, 555 U.S. 223, 232-236, 129 S. Ct. 808, 172 L. Ed. 2d. 565 (2009)(discussing the two-part procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) and concluding that while the two-party test is beneficial, it is not mandatory); *see also Campbell v. City of Springboro Ohio,* 700 F.3d 779, 786 (6th Cir. 2012) citing *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). Even after the motion to dismiss stage, when a court considers a motion for summary judgment based upon the defense of qualified immunity, "this usually means adopting … plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). *See also Davis v. Pickell*, 939 F. Supp. 2d 771, 776 (E.D. Mich. 2013).

B. Count I - 42 U.S.C. § 1983 - Unreasonable Search and Seizure: Plaintiff sufficiently pleaded that Defendants Sellner, Barberino, and Dionne unlawfully violated Honestie Hodges' constitutional right to be free from an unreasonable search and seizure.

To establish a claim pursuant to § 1983, a plaintiff must demonstrate: (1) defendants deprived plaintiff of a right, privilege, or immunity secured to them by the United States

Constitution or other federal law; and, (2) defendants caused the deprivation while acting under color of state of law. 42 U.S.C. § 1983; *See Graham v. Connor*, 490 U.S. 386, 396; 109 S. Ct. 1865; 104 L. Ed. 2d 443 (1989); *see also Albright v. Oliver*, 510 U.S. 266, 315 (1994); *see also Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000).

The Fourth Amendment of the United States Constitution forbids the infliction of excessive force and protects the rights of individuals to be free from unreasonable seizures. U.S. Const. amend. IV. For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001)(describing the Court's inquiry as "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

An action's unlawfulness can be drawn from direct holdings of a Court, specific examples, or general reasoning employed by a Court. *Feathers*, 319 F.3d at 848. "There need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendant had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L.3d 2d 666 (2002). It is not necessary that the action in question was previously held unlawful. *See Wilson v. Layne*, 526 U.S. 603, 615, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.3d 2d 523, 107 S. Ct5. 3034 (1987)). The action can be deemed unlawful if, when viewed in light of pre-existing law, the unlawfulness is apparent. *Id.*

The Supreme Court has clarified that neither a court decision nor an extreme level of factual specificity is necessary in every instance to give fair warning. *See United States v. Lanier*, 520 U.S. 259, 268, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997); *see also Gould v. Symons*, 275 F. Supp. 2d 843, 848 (E.D. Mich. 2003). The Supreme Court has also observed that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). "The fact that the law may have been unclear, or even hotly disputed, at the margins does not afford state actors immunity from suit where their actions violate the heartland of the constitutional guarantee, as that guarantee was understood at the time of the violation." *Stemler v. City of Florence*, 126 F.3d 856, 867 (6th Cir. 1997).

In the Sixth Circuit, the right to be free from unreasonable search and seizure was clearly established prior to December 6, 2017 (the date of Honestie's search and seizure). *See Graham v. Connor,* 490 U.S. 386, 392-93, 109 S. Ct. 1865, 104 L.3d.2d 443 (1989). The Sixth Circuit has also noted:

> The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. CONST. amend. IV. From this constitutional protection, it is well established that a warrantless search and seizure is unreasonable absent probable cause and exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *United States v. Radka*, 904 F.2d 357, 360 (6th Cir.1990).

*Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

In the present case, all three officers, Defendants Barberino, Sellner, and Dionne, violated Honestie's constitutional rights. Plaintiff properly pleaded that Honestie had a right to be free from unreasonable search and seizure and that her rights were violated when the Defendant officers held her at gunpoint, handcuffed her although she was not resisting, searched her, and detained her in a

police car without probable cause or reasonable suspicion that she had committed or was in the process of committing a crime.

Plaintiff pleaded that Defendant Sellner unlawfully restrained Honestie's liberty and freedom of movement by detaining her at gunpoint although she had not committed a crime and posed no threat to the officers; thus, Defendant Sellner had no justifiable fear for safety. PageID.1, ¶¶5-6; PageID.8, ¶67; PageID.15, ¶¶122-123; PageID.30, ¶222. And, at that time, no other "suspect" at that location was posing or creating any other risk of danger to any of the officers present. PageID.8, ¶67. Plaintiff also pleaded that Defendant Barberino unlawfully restrained Honestie's liberty and freedom of movement by handcuffing her though she was not armed, was not attempting to flee, and posed no threat to Defendant Barberino; thus, he also had no justifiable fear for safety. PageID.1, ¶¶5-6; PageID.15, ¶¶122-123; PageID.30, ¶223. Plaintiff pleaded further that Defendant Dionne unlawfully restrained Honestie's liberty and freedom of movement by placing her in a police car for approximately ten minutes, though, again, at the time, she was not armed, was not attempting to flee, and posed no threat to Defendant Dionne; thus he too had no justifiable fear for safety. PageID.1, ¶¶5-6; PageID.15, ¶¶122-123; PageID.30, ¶224, PageID.27, ¶205c.

Further detailing facts supporting that under the totality of the circumstances, Defendants had no reasonable suspicion or probable cause to seize Honestie Hodges in that manner, Plaintiff pleaded that Honestie had not committed a crime nor was she in the process of committing a crime when she was unreasonably searched and seized. PageID.2, ¶¶5, 8; PageID.14, ¶¶114-115; PageID.13-PageID.14, ¶¶110-116; PageID.15, ¶121. Plaintiff also pleaded that Honestie did not fit the description of GRPD's suspect as she was African American (not Caucasian), 11 years old (not an adult), and was not wearing her hair in a ponytail bun. PageID.1, ¶8; PageID.2, ¶3;

PageID.9, ¶¶78-82; PageID.14, ¶112-115; PageID.15, ¶125; PageID.24, ¶183; PageID.28, ¶207. In fact, Defendants concede this point in their Brief by indicating that Plaintiff (*i.e.,* Honestie's mother — not Honestie whom they encountered first) fit the description of the suspect. PageID.79, 91, 92, 107.

Additionally, Defendants argue that Plaintiff did not allege that Honestie was illegally searched. PageID.14, fn.10. This is patently incorrect. Plaintiff alleged that Defendant Dionne *searched* Honestie for weapons; that the Fourth Amendment to the United States Constitution protects citizens from unreasonable **searches**; that Defendants seized and detained Honestie and so violated her right to be free from unreasonable searches; and that the policies of the City subject youth citizens (and especially African American youth citizens) to invasive searches. PageID.9, ¶71; PageID.13, ¶111; PageID.14, ¶115; PageID.16, ¶132; PageID.23, ¶173; PageID.25-26, ¶194. These are undoubtedly substantive allegations. However, to the extent the Court determines further clarity is required regarding Plaintiff's claim that Honestie was subjected to an unreasonable search, Plaintiff should be afforded the opportunity to amend her Complaint. Fed. R. Civ. P. 15.

C. Count II - 42 U.S.C. § 1983 - False Arrest/False Imprisonment: The facts in Plaintiff's Complaint allege that Defendants Barberino and Dionne's detainment of Honestie was unreasonable as they lacked reasonable suspicion or probable cause that Honestie had committed a crime.

The Fourth Amendment protects against unreasonable seizures even when the seizures only involve a brief detention that does not constitute a traditional arrest. *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *see also Davis v. Mississippi*, 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969)). Generally, a seizure is reasonable if the seizure is based on probable cause to believe that the individual has committed a crime. *Bailey v. United States*, 568 U.S. 186, 133 S. Ct. 1031, 1037, 185 L. Ed. 2d 19 (2013).

> The Sixth Circuit generally merges the analysis of claims of "false arrest" and "false imprisonment" and regards such claims as rising or falling in unison based on the evaluation of probable cause for the arrest. *Saltmarshall v. Prime Healthcare Servs.-Garden City LLC*, 831 F. App'x 764, 768 (6th Cir. 2020) ("Saltmarshall asserts claims against Smith for false arrest and against Smith and Munson for false imprisonment. Under both Michigan and federal law, however, false arrest is a subspecies of false imprisonment; an unlawful arrest is just one way to imprison someone. As such, we will treat them here as one and will refer to them as a claim for false imprisonment. The sustainability of Saltmarshall's claim hinges on whether Smith had probable cause to arrest him.") (citing *Wallace v. Kato*, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 672 N.W.2d 351 (2003); *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008)).

*Akima v. Peca*, 652 F. Supp. 3d 848, 863 (E.D. Mich.), aff'd, 85 F.4th 416 (6th Cir. 2023).

Plaintiff has properly pleaded her count of false arrest/false imprisonment. Plaintiff pleaded that Defendants had no probable cause that Honestie had committed a crime (*e.g.*, PageID.1, ¶8; PageID.14, ¶112-115; PageID.15, ¶125; PageID.24, ¶183; PageID.28, ¶207) but also pleaded the specific reasons why the GRPD officers lacked probable cause. For example, Plaintiff pleaded that Honestie did not match the description of GRPD's suspect, as she was African American (not Caucasian), 11 years old (not an adult), and was not wearing her hair in a ponytail bun. PageID.2, ¶3; PageID.9, ¶¶78-82. Additionally, Plaintiff also pleaded that Honestie had not committed a crime, was not in the process of committing a crime, was not resisting the GRPD officers, and was not attempting to flee. PageID.2, ¶¶5, 8; PageID.14, ¶¶114-115; PageID.13-PageID.14, ¶¶110-116; PageID.15, ¶121. Plaintiff also pleaded that: Defendant Sellner unlawfully restrained Honestie's liberty and freedom of movement by detaining her at gunpoint (PageID.30, ¶222); Defendant Barberino unlawfully restrained Honestie's liberty and freedom of movement by handcuffing her (*Id. at* ¶223); and, Defendant Dionne unlawfully restrained Honestie's liberty and freedom of movement by placing her in a police car for approximately ten minutes (*Id.* at ¶224, PageID.27, ¶205c).

Plaintiff has pleaded sufficiently that under the circumstances, it was unreasonable for an officer to take those escalated actions against an 11-year-old girl who was crying and whose mother, present at the scene, was repeatedly telling the officers that Honestie was only a child. The officers intentionally ignored this information and unlawfully detained Honestie Hodges anyway. For these reasons, Defendants' Motion to Dismiss Plaintiff's Claim of False Arrest/False Imprisonment should be denied.

D. Count III - 42 U.S.C. § 1983 - Excessive Force: Plaintiff pleaded facts to establish that Defendants Sellner and Barberino's use of force was excessive and unreasonable.

To determine whether a law enforcement officer is entitled to qualified immunity on an excessive force claim, the court considers two factors: First, whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment, and second, whether that right was clearly established at the time of the incident. *Campbell v. City of Springboro, Ohio,* 700 F.3d 779, 786 (6th Cir. 2012) citing *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). Critically important, "a plaintiff may 'allege use of excessive force even where the physical contact between the parties did not leave excessive marks or cause extensive physical damage.' " *Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009) (quoting *Ingram v. City of Columbus*, 185 F.3d 579. 597 (6th Cir. 1999)). The extent of an individual's injury is not "crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment[.]" *Baskin v. Smith*, 50 F. App'x 731, 737 n.2 (6th Cir. 2002).

Under Sixth Circuit precedent, excessive force claims are viewed in segments. *See Gaddis v. Redford Twp.,* 364 F.3d 763, 772 (6th Cir. 2004) quoting *Dickerson v. McClellan,* 101 F.3d 1151, 1161 (6th Cir. 1996)(quotations omitted). This segmented approach requires courts to identify the seizure at issue and then examine whether the force used was reasonable in the totality of the

circumstances. *Id.* (quoting *Dickerson*, 101 F.3d at 1161)(quotations omitted). Plaintiff has pleaded sufficiently that Honestie Hodges was subjected to excessive force when Officer Sellner and others drew guns at or in the direction of an 11-year-old child who posed no known risk and had committed no crime and when Officers Barberino handcuffed her, and Officer Dionne failed to immediately take the handcuffs off even after knowing that no reasonable threat was apparent.

1. Consistent with Sixth Circuit precedent, the drawing of guns is excessive force under the circumstances alleged in Plaintiff's Complaint as Defendant Sellner violated Honestie's clearly established rights by pointing his gun at Honestie, who was unarmed, did not pose any threat to Defendant Sellner (or herself, or anyone else), complied with all of Defendant Sellner's demands, and did not resist or attempt to flee.

In certain situations where an individual is known to be cooperative and does not pose an immediate threat to the officers or is not attempting to flee, the act of drawing a gun on that individual <u>*can*</u> constitute excessive force. *See United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007); *Binay v. Bettendorf*, 601 F.3d 640, 649-650 (6th Cir. 2010); *Vanderhoef v. Dixon*, 938 F.3d 271, 277-78 (6th Cir. 2019). To further illuminate this point:

> **[P]ointing a firearm at an individual ... is more than merely displaying a firearm with an intent to intimidate (i.e., brandishing) because by pointing a firearm at an individual and making a demand of that individual, a defendant communicates the implicit threat that if the individual does not comply with the defendant's demands, the defendant will shoot the individual."** *United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007). **Accordingly, the Sixth Circuit has held that pointing a gun at an individual under certain circumstances can constitute excessive force in violation of the Fourth Amendment.** See, *e.g.*, *Binay v. Bettendorf*, 601 F.3d 640, 649-650 (6th Cir. 2010) (finding that pointing a gun at an individual who "had no criminal record, cooperated throughout the ordeal, posed no immediate threat to the officers, and did not resist arrest or attempt to flee" constituted excessive force); *Vanderhoef v. Dixon*, 938 F.3d 271, 277-78 (6th Cir. 2019) (finding that ordering "three unarmed and nonthreatening teens exit[ing] [a] damaged vehicle" to the ground at gunpoint violated their constitutional rights); *Wright v. City of Euclid*, 962 F.3d 852, 866 (6th Cir. 2020) (finding a genuine dispute of material fact when officers conducted a traffic stop with their weapons drawn without identifying the plaintiff as a drug dealer or corroborating their suspicions of criminal activity).

*Brown v. City of Wyoming*, 658 F. Supp. 3d 546, 566 (W.D. Mich. 2023)(emphasis added).

Unquestionably, prior to the incident involving Honestie Hodges, the Sixth Circuit ruled in both *Bolden* (2007) and *Binay* (2010) that pointing a gun at an individual under certain circumstances could constitute excessive force. This right was clearly established at the time of the incident with Honestie Hodges on December 6, 2017.

Moving to whether it was alleged that an officer violated the established right, Plaintiff properly pleaded a claim of excessive force against Defendant Sellner. Similar to the situation in *Binay*, Plaintiff alleges in her facts that the Sellner did point his gun in Honestie's direction even though she cooperated throughout the ordeal, posed no immediate threat to the officers, and did not resist arrest or attempt to flee. *See* PageID.2, ¶¶ 1, 6, 7,8; PageID.7, ¶¶ 50, 52, 53; PageID.8, ¶67, PageID.10, ¶83, PageID.13, ¶109, PageID.14, ¶114; PageID.15, ¶¶121-123; PageID.17, ¶141, 143, 144; PageID.27, ¶205.a; PageID.30, ¶222.

Viewing these facts alleged in Plaintiff's Complaint in the light most favorable to Plaintiff and taking the well-pleaded factual allegations as true, Plaintiff has sufficiently pleaded a violation of Plaintiff's constitutional rights. Plaintiff properly pleaded a claim of excessive force against Defendant Sellner and granting qualified immunity at this stage of the proceedings would be improper.

2. Handcuffing an individual who is not resisting and who poses no immediate threat constitutes excessive force.

Despite Defendants' arguments, it is not necessary for Plaintiff to allege that the use of handcuffs caused an injury to avoid the application of qualified immunity. A law enforcement officer can be denied qualified immunity for using excessive force involving handcuffing in several situations, including situations where an individual is not resisting arrest or detention by law enforcement officers. *See Al-Lamadani v. Lang*, 624 F.App'x. 405 (6th Cir. 2015). In *Al-Lamadani*,

the Sixth Circuit summarized its previous holdings where the use of handcuffs was deemed unreasonable and unjustified:

> We have held that "[i]f there is no specific reason for the officers to believe that the detainee poses a risk of flight or violence, 'a bare inference' or speculation that the detainee may somehow be violent is not sufficient to justify the use of handcuffs." *Brown v. Lewis*, 779 F.3d 401, 415 (6th Cir.2015). We have also held that handcuffing was completely lacking in justification when officers stopped a group of youths, conducted illegal pat-down searches of them, and uncovered no weapons. *Bennett v. City of Eastpointe*, 410 F.3d 810, 837 (6th Cir.2005) ("That makes it truly remarkable (not in a good way) that the officers then handcuffed the youths.")

*Al-Lamadani*, 624 F..App'x at 412. The Sixth Circuit's holdings regarding the use of handcuffs and the reasonableness of the handcuffs in *Al-Lamadani, Brown, and Bennett* were all rendered while reviewing cases at the summary judgment stage. The parties in *Al-Lamadani, Brown, and Bennett* had the benefit of conducting discovery and submitting evidence for the Court's review. Because Plaintiff has properly pleaded her claims of excessive force, she should be afforded the opportunity to develop evidence and testimony around these very issues, and thus, Defendants' Motion to Dismiss Plaintiff's excessive force claims should be denied.

a. Defendant Barberino violated Honestie's clearly established rights by handcuffing her.

Plaintiff pleaded that Defendant Barberino handcuffed Honestie, although she posed no immediate threat to the officers or anyone else on the scene, did not resist arrest or attempt to flee, and was unarmed. *See* PageID.2, ¶¶ 1, 6, 7, 8; PageID.8, ¶¶ 58-64, 67; PageID.9, ¶70; PageID.10, ¶83, PageID.13, ¶109, PageID.14, ¶113-115; PageID.15, ¶¶119, 121-123; PageID.17, ¶141-144; PageID.27, ¶205.a; PageID.30, ¶223. Plaintiff pleaded, similar to the circumstances in *Brown v. Lewis*, that Defendant Barberino had no reason to believe that Honestie posed a risk of flight or violence, and as she was compliant with all of his commands to put her hands behind her back, even though she was obviously terrified and crying. PageID.8, ¶58-63.

b. Defendant Dionne violated Honestie's clearly established rights by continuing the use of handcuffs with an 11-year-old child who posed no risk given that she was unarmed and clearly not the suspect whom GRPD was searching for.

Plaintiff pleaded that Defendant Dionne kept Honestie handcuffed even after searching her and finding no weapons. PageID.9, ¶¶70-72. Plaintiff also pleaded that Defendant Dionne even told Honestie that she was not going to jail and that the GRPD officers may have been at the wrong house. PageID.9, ¶73. So, certainly, once he confirmed that Honestie was not armed and realized that she was just a child, he could have easily removed the handcuffs. Instead, he did not remove the handcuffs until he was instructed to do so. PageID.9, ¶¶73-76. Defendants state that "Bush asked if this was a juvenile and whether she was in handcuffs." PageID.81. When Defendant Dionne confirmed that she a child, Sgt. Bush directed Officer Dionne to remove the handcuffs, which Dionne promptly did." PageID.81. That's because Sgt. Bush knew immediately that this was a constitutional violation and that they had no reason to handcuff and detain the 11-year-old girl. Irrespective of those facts, Defendant Dionne put Honestie in the back of a police car, closed the door, and left her there alone for approximately 10 minutes, where she continued crying. PageID.9, ¶76-77; PageID27, ¶205c.

Defendants argue that "in the dim light, **Whitney** appeared to be a white female with her dark hair in a bun, consistent with the description of the stabbing suspect." PageID.79 (emphasis added). And that's exactly the point. Defendants pointed guns at Honestie and placed handcuffs on her even though she **did not** fit the description of the suspect. Not at all.

Plaintiff properly pleaded claims of excessive force against Defendants Sellner, Barberino, and Dionne. However, Plaintiff inadvertently failed to list Defendant Dionne in the heading of Count III, but included allegations regarding Defendant Dionne within the body of the count. Thus, Plaintiff would respectfully request permission to Amend her Complaint pursuant to Rule 15, to

clarify that an excessive force claim was indeed alleged against Defendant Dionne. Consequently, Defendants' Motion to Dismiss Plaintiff's claims of excessive force should be denied.

E. Count IV - 42 U.S.C. § 1983 Municipal Liability and Count V - 42 U.S.C. §1983 - Failure to Train and Supervise: Plaintiff has pleaded that Defendant City of Grand Rapids' lack of policy and inadequate training of its officers was the moving force behind the violation of Honestie's clearly established constitutional rights.

*Monell* imposes municipal liability under § 1983 when (1) a constitutional violation has occurred and (2) the municipality "is responsible for that violation" based on the execution of a government policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Doe v. Claiborne Cnty*., 103 F.3d 495, 505 (6th Cir. 1996). To hold Defendant City of Grand Rapids liable under § 1983, Plaintiff must show that the municipality's policy, or lack thereof, was a moving force in the deprivation of Honestie's rights and arose from deliberate indifference to her rights. *See Carey v. Helton*, 70 F. App'x 291, 293 (6th Cir. 2003); *see also Doe v. Claiborne Cnty., Tenn*., 103 F.3d 495, 508 (6th Cir. 1996). A plaintiff has at least four avenues available to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or, (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiff has sufficiently pleaded the counts of *Monell* Municipal Liability and Failure to Train and Supervise against the City of Grand Rapids. As a starting point, throughout the prior sections of this brief, Plaintiff has clearly identified multiple constitutional violations committed by the individual Defendant officers. *Supra*, §§ IV.B, IV.C, and IV.D. Thus, we now turn to whether facts have been pleaded regarding whether those constitutional violations may be attributed to the City of Grand Rapids' municipal policy (or lack thereof) or its failure to train.

Plaintiff has properly alleged and identified both the lack of policy and the lack of training; connected and attributed those deficiencies to the City of Grand Rapids; and, has alleged that Honestie Hodges was injured because of Defendant's lack of policy and inadequate training. In fact, Plaintiff specifically alleged in her Complaint that The City's lack of policy with respect to policing children coupled with the City's policy, practice, pattern, or custom of seizing, detaining, or arresting children when there was no probable cause or reasonable suspicion to believe the children had committed a crime made it foreseeable and inevitable (*i.e.*, the moving force) that an injury to minor children was certain to occur. PageID.11, ¶¶97-99; PageID.12, ¶¶99a-101; PageID.13, ¶104; PageID.14, ¶113; PageID.19, ¶¶155-158; PageID.10, ¶158-159. In fact, Plaintiff has alleged more than a deficit. She has alleged complete and abject failures and omissions. That, in and of itself, is the causal link between the municipality's action—and, in this case, inaction—and the deprivation of Honestie's federal rights. It is plainly obvious that the absence of policy and training made it inevitable that a constitutional violation would occur.

Courts have not saddled plaintiffs with the unreasonable and unrealistic burden of supplying information and alleging facts in her complaint that, as a practicable matter, may only be known, confirmed, and available *after* discovery. Not only are plaintiffs not privy to internal policies and training procedures of law enforcement until after discovery has ensued and those documents have been requested and produced, but defendants regularly request entry of a protective order before producing documents, and some even request that excerpts be filed under seal. Generally, plaintiffs have a duty to set forth facts that give rise to claims that are plausible and, when accepted as true, raise a right to relief above a speculative level. Plaintiff has done so.

*City of Canton v. Harris* explains the failure-to-train context that attaches to municipal liability under § 1983. *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed.

2d. 412 (1989). The *Canton* Court unanimously rejected the argument that municipal liability can be imposed only where the challenged policy is itself unconstitutional and concluded: "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Id.* at 387. "The inadequacy of training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. The Court observed:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. [footnotes omitted]

*Id*. at 390. The "deliberate indifference" standard has nothing to do with the level of culpability that may be required to make out the underlying constitutional wrong but rather has to do with what is required to establish the municipal policy as the "moving force" behind the constitutional violation. *Id.* at 388, n.8.

*Canton* provides a plaintiff with two different approaches to a failure-to-train case. First, a plaintiff may establish deliberate indifference by demonstrating a failure-to-train in a specific area where there is an obvious need for training to avoid violations of citizens' constitutional rights. Second, a plaintiff may rely on a pattern of unconstitutional conduct so pervasive as to imply actual or constructive knowledge on the part of policymakers, whose deliberate indifference, evidenced by a failure to correct once the need for training became obvious, would be attributable to the municipality. *See generally*, *Canton*, 489 U.S. 378 (1989).

> The absence of a governing policy can be actionable "where the need to act is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need" in failing to institute a policy controlling

> the situation. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff can show either "that the municipality possessed actual knowledge indicating a deficiency with the existing policy ... (or lack thereof), such as where there have been recurring constitutional violations[,]" or that the need for a policy was "plainly obvious." *Id.* at 648–49. The latter case arises only "in a narrow range of circumstances where a violation of federal rights may be a highly predictable consequence of [the municipality's failure to act]." *Id.* at 649 (quotation marks omitted).

*Mills v. Owsley Cnty. Kentucky*, 483 F. Supp. 3d 435, 474–75 (E.D. Ky. 2020).

In this case, Plaintiff pleaded facts in her Complaint supportive of both approaches by alleging Defendants' deficiencies in policy and training by: 1) the complete absence of policy and training in a specific area where there is an obvious need; and, 2) a pattern of unconstitutional conduct that has not been corrected.

Plaintiff pleaded that Defendant City of Grand Rapids, "did not provide its employees with adequate training regarding interaction with children/youth citizens," and "had no policy for its officers to follow when interacting with children/youth citizens." PageID.13, ¶¶103, 104. More specifically, Plaintiff enumerated several ways that Defendant's specific failures in policy and training *caused* direct harm to Honestie Hodges, including, but not limited to, harm caused by improper use of force and the failure to identify a child who is not a suspect. PageID.19, ¶155. When pleading causation, at the motion to dismiss stage, it is sufficient to plead that the defendant had a deficient policy that led to a plaintiff being deprived of his or her constitutional rights. *See Victor v. Reynolds*, 582 F. Supp.3d 516 (E.D. Mich. 2022). Plaintiff followed this practice and properly pleaded causation in her Complaint by stating:

> 97. Prior to the incident with Honestie, Defendants Sellner, Barbarino, and Dionne did not receive adequate training regarding community policing encounters with children.
>
> 98. Honestie Hodges' rights were violated because Defendant Grand Rapids, and Defendant Rahinsky in his capacity as the former chief and final decision maker,

> tolerated, authorized and/or permitted customs, policies, practices and/or procedures of:
>
> > a. improper and ineffective policing encounters with children, especially minority children/youth citizens;
> >
> > b. insufficient supervision of children/youth citizens;
> >
> > c. insufficient training regarding proper interaction and policing of children/youth citizens; and,
> >
> > d. unnecessary and unwarranted use of excessive force toward children/youth citizens.
>
> 99. Defendant Grand Rapids' failure to adequately train and/or failure to follow proper policy, practice, or procedure significantly contributed to, and/or caused violations of Honestie Hodges' constitutional rights, including but not limited to the following:
>
> > a. Failure to adequately train or failure to follow proper policy, practice, or procedure for using essential skills in identifying and responding to incidents involving a child/youth citizen;
> >
> > b. Failure to adequately train or failure to follow proper policy, practice, or procedure for use of force toward children/youth citizens; and,
> >
> > c. Otherwise failing to adequately train and/or failing to follow proper policy, practice, or procedure resulting in the violation of Honestie Hodges' constitutional rights.
>
> 100. Defendant Grand Rapids, tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they trained their officers in a method that is designed or is known to cause harm, injury, and trauma to children/youth citizens.
>
> 101. Defendant Grand Rapids, tolerated, authorized or permitted a custom, policy, practice or procedure of improper conduct and insufficient supervision, in that they failed to adequately screen, counsel, or discipline such individuals as described above, with the result that said officers were allowed to violate the rights of children/youth citizens such as Honestie Hodges.

PageID.11-12, ¶¶97-101.

As noted and cited throughout this brief, Plaintiff has referenced a number of allegations in her Complaint that draw the causal connection between the above acts and Honestie's injuries

when she was unlawfully searched, seized, and detained. Contrary to Defendants' assertions, these are not conclusory statements. They are allegations that, at the pleading stage, rise to the level of plausibility—if not probability—as to injuries that Honestie suffered and the cause of these injuries. Plaintiff establishes that Honestie's harm would not have occurred if the GRPD had proper training on community policing, and more specifically, community policing that involved encounters with children. Or alternatively, because the GRPD completely failed to implement any policy, process, or procedure that was intended to protect the rights of children (like Honestie), Honestie was harmed. Plaintiff pleaded that Honestie's injuries flowed from The City's complete absence of policies, processes, procedures, and related training for its officers regarding how they should carry out their duties and responsibilities when encountering children.

Plaintiff also pleaded that after the incident, Chief Rahinsky indicated that GRPD was reviewing its policies, procedures, and training as it related to officers' interaction with children and youth citizens. PageID.13, ¶105. Certainly, if there was no deficiency in the training of the officers, there would have been no need to review GRPD's policies. Finally, Plaintiff pleaded that after the incident, "the GRPD adopted the "Honestie Policy," which calls for using the **least restrictive option** when interacting with children and youth citizens." PageID.13, ¶106 (emphasis added). The new policy was named after Plaintiff's daughter. It is truly remarkable that GRPD would create and implement a policy named after Honestie that calls for using the least restrictive option when interacting with children and youth citizens, yet attempt to maintain a position that at the time of the incident, their policies and training were sufficient and adequate.

Furthermore, in an attempt to cement their position with respect to causation, Defendants erroneously rely on the district court ruling in *Lyoya v. Schurr* (W.D. Mich. 1-22-cv-1160, PageID.641-663). The precedential value of that case is yet to be determined as the ruling is

currently on appeal before the Sixth Circuit and has not been fully briefed, argued, or decided. Importantly, at least one of the cases that the *Lyoya* court relies upon with respect to the causation element of a *Monell* claim applies a summary judgment analysis (as opposed to 12(b)(6) standard). In *Lyoya*, the court indicated that the plaintiff's amended complaint failed to allege specific facts supporting causation and cited, among other authority, *Gambrel v. Knox County, Kentucky*, 25 F.4th 391 (6th Cir. 2022), in support of this premise. However, the lower court in *Gambrel* ruled on summary judgment **after the parties conducted discovery**. Specifically, in its discussion of the causation element under *Monell*, the Sixth Circuit in *Gambrel* court asked whether the plaintiff produced "evidence." *Id*. at 410-411. The Sixth Circuit in *Gambrel* did not analyze whether the pleadings were sufficient. Instead, the *Gambrel* decision analyzed evidence that had been submitted to the court for review on summary judgment. Using this case, or others like it, to analyze Plaintiff's pleadings is improper.

Defendants argue that Plaintiff failed to plead how the training was legally deficient because of the reference to one prior interaction between law enforcement and a minor before the Hodges assault. But Defendants gloss over the law that allows a plaintiff to show deliberate indifference based on a single incident of liability if the risk of constitutional violation is so obvious or foreseeable that it amounts to deliberate indifference. *See Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 287-289 (6th Cir. 2020).

Defendants also argue that Plaintiff failed to plead how the training was legally deficient because of the reference to a prior interaction before the Hodges assault. Plaintiff pleaded allegations of one incident that occurred before the December 2017 incident involving Honestie as an example. PageID.3, ¶¶14a. The public was made aware of that incident because the victims reported it to the media. Plaintiff did not indicate that the March 2017 incident was the only

incident prior to December 2017 involving GRPD officers holding children at gunpoint who were not committing crimes, were unarmed, were not fleeing the police, and presented no danger to officers. Plaintiff also pleaded that on at least two occasions before the adoption of the Honestie Policy and on one occasion after, GRPD officers held children at gunpoint without probable cause or reasonable suspicion that they were in the course of committing a crime or reasonable suspicion that the children had committed a crime. PageID.3, ¶¶14a-b. Even after GRPD adopted the Honestie Policy, they continued to engage in a practice of holding children at gunpoint who were unarmed and had not committed any crime. PageID.3, ¶¶14c-16. The important inquiry is whether a violation of federal rights may be a highly predictable consequence of the City of Grand Rapids' failure to act. In other words, and more specifically, was it highly predictable that the City of Grand Rapids would violate the rights of children (or other individuals) who were not committing crimes, were not fleeing, and were not armed but found themselves in a situation were law enforcement had confronted them, if there was absolutely no policy and no training on how to protect children's constitutional, federal, and state guaranteed rights? The answer is "yes."

F. Count VI - 42 U.S.C. § 1983 - Substantive Due Process: Defendants: Plaintiff sufficiently pleaded facts establishing Honestie's fundamental right to personal security and bodily integrity.

Contrary to Defendants' argument, it is permissible for a plaintiff to alternatively plead claims arising out of the same incidences and occurrences. Citizens have "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity," and that right is fundamental when "the magnitude of the liberty deprivation that [the] abuse inflicts upon the victim ... strips the very essence of personhood." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062–63 (6th Cir. 1998) citing *Doe v. Claiborne County*, 103 F.3d 495, 506–07 (6th Cir. 1996). Similarly, the Michigan Court of Appeals has stated that, "[t]he doctrine

of substantive due process protects unenumerated fundamental rights and liberties under the Due Process Clause of the Fourteenth Amendment." *Mays v. Snyder*, 323 Mich. App. 1, 58. The court explained further that viable claims that allege violations of the right to substantive due process often involve an action so arbitrary in the constitutional sense so as to "shock the conscience" and that the very essence of a substantive due process claim alleges an "arbitrary deprivation of liberty or property interests." *Mettler Walloon LLC v Melrose Twp*, 281 Mich. App. 184, 200, 201; 761 N.W.2d 293 (2008).

Holding an 11-year-old African American child at gunpoint, handcuffing that child, searching her for weapons, and then putting that child in a police cruiser for 10 minutes when the GRPD was searching for a suspect who was an adult Caucasian woman constitute acts that, when taken collectively, shock the conscience. It is especially egregious when that child was complying with all demands and posed no risk of danger or harm to anyone. It is important in making this assessment to consider the perspective of Honestie at the time of the incident instead of substituting the perspective of an adult examining the situation. Imagine being 11 years old, having a gun pointed at you, being handcuffed, and then being put in the back of a police car. She was a terrified child. Her liberty was undeniably deprived. Plaintiff properly pleaded her substantive due process claim, and consequently, Defendants' Motion to Dismiss should be denied.

G. Count VII - Michigan Constitution Article I, § 11 - False Arrest and Count VIII - Michigan Constitution Article I, § 17 - Due Process: Plaintiff's Complaint requested injunctive relief based on Defendants Sellner, Barberino, and Dionne's violations of Honestie's state constitutional rights.

Michigan's Constitution states that "[t]he person ... shall be secure from unreasonable searches and seizures." MICH. CONST. Art. 1, § 11. Similarly, Michigan's Constitution states that "[n]o person shall be ... deprived of life, liberty or property, without due process of law." MICH. CONST. Art. 1, § 17.

While the Sixth Circuit has recognized that "[u]nder Michigan law, plaintiffs may not bring suits for damages against individual government employees for alleged violations of the Michigan Constitution" (*Brent v. Wayne Cnty. Dep't of Hum. Servs*., 901 F.3d 656, 687 (6th Cir. 2018)) and the Michigan Supreme Court has held that there is no inferred damages remedy for violations of Michigan Constitution against either municipalities or government employees sued in their individual capacities (*Jones v. Powell*, 612 N.W.2d 423, 426, 427 (Mich. 2000)), Plaintiff requested "a declaration that Honestie's rights were violated," as well as injunctive and equitable relief. PageID.3,¶17, PageID.32.

The Michigan Constitution permits recovery of injunctive relief. MICH. CONST. Art. XI, § 5. Thus, to the extent that Plaintiff's other claims do not provide Plaintiff with the opportunity to obtain declaratory, equitable, or injunctive relief, Plaintiff seeks relief under these claims as an alternative and non-monetary damage-based remedy. Specifically, Plaintiff would request that the City of Grand Rapids be enjoined from: (1) holding children at gunpoint who are unarmed, compliant with officer commands, and do not match the description of criminal suspects; (2) handcuffing children who are not criminal suspects, are not resistant, and are not attempting to flee; and, (3) detaining children when they are compliant with officer commands and are not attempting to flee. Plaintiff respectfully requests that Defendants' Motion to Dismiss Plaintiff's state-based constitutional claims be denied.

H. Count IX - Governmental Liability Negligence: Plaintiff's Complaint alleged that Defendants Sellner, Barberino, and Dionne's acts were reckless and demonstrated a lack of concern for whether Honestie would be injured; thus, they should not be afforded immunity under the GTLA

Defendants Sellner, Barberino, and Dionne are not entitled to statutory immunity. Under Michigan law, governmental officials are immune from tort liability only if: (1) they acted or reasonably believed they acted within the scope of their employment, (2) engaged in the discharge

of a government function, and (3) their "conduct [did] not amount to gross negligence that [was] the proximate cause of the injury or damage." M.C.L. § 691.1407(2).

Plaintiff is not aware of any dispute as to whether the individual Defendants acted within the scope of their employment while engaged in a governmental function. Thus, turning to the third prong of the test, Plaintiff has pleaded plausible facts that Defendants Sellner, Barberino, and Dionne's conduct amounted to gross negligence that was indeed the proximate cause of Honestie's injuries. In Michigan, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(7)(a). Gross negligence suggests "almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Tarlea v. Crabtree*, 263 Mich. App. 80, 90 (2004). To sufficiently allege gross negligence under the Michigan Governmental Tort Liability Act (GTLA), a plaintiff must demonstrate that the defendant's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results. Exhibit 2, *Streeter v. Macomb County*, 2023 WL 1784745 (E.D. Mich. Feb. 6, 2023).

Defendants seem to argue that Plaintiff erroneously alleged a claim of gross negligence. Plaintiff did not allege a claim of "gross negligence."[3] Plaintiff titled the count "Governmental Liability - Negligence" and alleged that Defendants Sellner, Barberino, and Dionne owed specific duties to Honestie (PageID.27, ¶¶204a - 204g), breached those duties toward Honestie (PageID.27,¶¶205a - 205g), committed acts of gross negligence such that they should not be

---

[3] Courts have noted that some parties who sue officers label the cause of action as "gross negligence" as opposed to "negligence." *See generally*, Exhibit 2, *Streeter*, *9. However, when parties have titled their claims "gross negligence," the court is to treat it as a count of ordinary negligence. *Doe v. Terry*, E.D. Mich. 4:23-cv-10028, PageID.310-311.

afforded the protection of statutory governmental immunity, (PageID.28, ¶¶ 206-209), and as a proximate cause of their acts of gross negligence, caused Honestie damages (PageID.28, ¶ 210).

Specifically, with regard to Defendants' breach of duty toward Honestie and acts of gross negligence, Plaintiff alleged:

> 205. Defendants violated that duty in the following manners:
>
> > a. Handcuffing Honestie Hodges though she did not fit the description of the criminal suspect, was not armed, was not fleeing the scene, and was not otherwise resisting the officers in any manner;
> >
> > b. Pointing firearms (with lasers) at Honestie;
> >
> > c. Detaining Honestie Hodges in a police cruiser for approximately 10 minutes;
> >
> > d. Questioning Honestie Hodges outside of the presence of her parents/guardians;
> >
> > e. Using force against Honestie Hodges, an 11-year old child/youth citizen;
> >
> > f. Failing to use skills to deescalate the emotional trauma inflicted upon a youth citizen who is not a suspect on a particular call; and,
> >
> > g. Otherwise failing to execute proper policies, practices and/or procedures that resulted in the infringement of Honestie Hodges' constitutional and federal rights.
>
> 206. Defendants Sellner, Barberino, and Dionne committed acts of gross negligence including but not limited to, point[ing] their firearm at Honestie (Defendant Sellner), handcuff[ing] Honestie (Defendant Barberino), and seiz[ing] and detained Honestie (Defendants Barberino and Dionne).
>
> 207. The aforementioned acts, carried out in the absence of probable cause or reasonable suspicion that a crime was being or had been committed, were so reckless as to demonstrate a substantial lack of concern whether an injury would result to Honestie.

PageID.27-28.

Plaintiff's negligence count is an alternative pleading to the assault and battery claim discussed below. A defendant's action can rise to the level of being reckless and can also be

intentional. Plaintiff has properly pleaded claims of negligence against Defendants Sellner, Barberino, and Dionne and has pleaded that their actions constitute a willful disregard of precautions or measures to attend to safety and substantial risks. Thus, there is no basis for dismissing Plaintiff's claims for negligence against Defendants Sellner, Barberino, and Dionne.

I. Plaintiff's state law Assault and Battery and False Imprisonment claims were timely filed pursuant to Michigan's savings statute.

The plain language of Michigan's Saving Statute states: If a person dies before the period of limitations has run … an action that survives by law may be commenced by the personal representative of the deceased person **at any time within 2 years after letters of authority are issued <u>although the period of limitations has run</u>.** M.C.L. § 600.5852(1)(emphasis added). Honestie died before her period of limitations had run on <u>**all**</u> of her causes of actions. Because she was a minor at the time of the incident giving rise to her causes of action, had she not passed away the statute of limitations on **all** of her actions would have expired on her 19th birthday, or November 9, 2025.

The Personal Representative of Honestie's estate was appointed on November 22, 2022. Plaintiff filed suit on November 22, 2023. Thus, within the plain language of the savings statute, suit was filed within two years after the letters of authority were issued in compliance with the Michigan savings statute. The period of limitations on all of Honestie's causes of action had not run at the time of filing suit. Consequently, all of Plaintiff's claims are timely.

Pursuant to MCL § 600.5852(1), if an individual dies *before* the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority, although the period of limitation has run.

At the time of Honestie's death, the period of limitations had not run on any of her causes of actions. She was 14 years old. All of Honestie's causes of action were tolled until her 19th birthday pursuant to M.C.L. § 600.5851(1). Tragically, she passed away before her 19th birthday. So, within the language of § 600.5852(1), a personal representative was permitted to commence all actions that survived by law within two years after her letters of authority were issued, even if the period of limitations had run. As previously noted, Whitney Hodges was issued letters of authority on November 22, 2022. Thus, she had two years from that date to bring any cause of action that survived by law.

J. Count X - Assault & Battery: Facts were alleged that Defendants Sellner, Dionne, and Barberino's unreasonable acts created a reasonable apprehension of an offensive touching or harm.

Alleging a claim of assault and battery against a police officer does not require an allegation of violent touching, nor does it require that Plaintiff plead a physical injury. The Sixth Circuit has indicated, "[u]nder Michigan law an assault is 'an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.' " *Grawey v. Drury*, 567 F.3d 302, 315 (6th Cir. 2009) quoting *People v. Nickens*, 470 Mich. 622 (2004). Plaintiff alleged that Defendants Sellner, Dionne, and Barberino acted in a manner that created a reasonable apprehension of being harmed.

In Michigan, a battery is defined as " 'an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person.' " *Id.* Ultimately, under Michigan law, "an assault and battery claim against a police officer requires proof that the officer's actions 'were not justified because they were not objectively reasonable under the circumstances.' " *Bell v. Porter*, 739 F. Supp. 2d 1005, 1015 (W.D. Mich. 2010) (citation omitted). As this court indicated in *Bell v. Porter*,

> Plaintiff's assault and battery claim is analogous to her § 1983 excessive force claim, in that she can only recover if Officer Porter's conduct was objectively unreasonable. *See VanVorous*, 687 N.W.2d at 142 (noting that under Michigan law, an assault and battery claim against a police officer requires proof that the officer's actions "were not justified because they were not objectively reasonable under the circumstances"). Accordingly, the same issues of fact identified with respect to Plaintiff's excessive force claim preclude entry of summary judgment on Plaintiff's assault and battery claim.
>
> Neither is Officer Porter entitled to summary judgment on the basis of governmental immunity. To be entitled to governmental immunity for an intentional tort, Officer Porter must establish that "he was acting in the course of his employment and at least reasonably believed that he was acting within the scope of his authority, that his actions were discretionary in nature, and that he acted in good faith." *Miller*, 606 F.3d at 254 (citing *Odom*, 760 N.W.2d at 228). Good faith is defined as "without malice." Id. (quoting *Odom*, 760 N.W.2d at 225)

*Id*.

Additionally, in *U.S. v. Barkovitz*, 29 F. Supp. 411 (E.D. Mich. 1998), the court noted, "**[u]nder Michigan law, *officers wouldn't dream of interrogating a twelve-year-old or request that the child waive his rights without the expressed consent and attendance of his parents*.**" *Barkovitz*, 29 F. Supp. at 416. (emphasis added). Although *Barkovitz* addresses the merits of a Fourth Amendment search, the case contains relevant discussions and is instructive on the circumstances to consider when effectuating a warrantless search involving a child. Specifically, the discussion of consent is relevant to Plaintiff's claim of assault and battery. In discussing the dynamics between a child and law enforcement officers, the Court noted:

> The government argues that Derek had sufficient maturity to allow the police into his father's bedroom. The government notes that Derek was crying as the police approached, but stopped because the officers had a soothing effect on Derek. This Court finds just the opposite as to Derek's maturity. Derek in his frightened crying state should have put the officers on notice that he did not have the sufficient maturity to grant them access to the home at that hour. That night Derek was awoken by the noise of a fight. He went upstairs to his living room to ascertain where his father and his brother were. **He was scared and he was confused**. In this confusion, four police officers came to the door of Derek's home, three in uniform, and all carrying guns. The testimony at the hearing showed that three of the four officers were above six feet tall and weighed over 240 pounds each. Derek at 4′10″

> and weighing only 70 pounds looked outside only to see the whole evening shift of the Lincoln Park Police Department out in front of his house and nearly a thousand pounds of men standing over him. **Here the disparity in age, size, maturity and the show of force exhibited by the government, all militate in favor of the conclusion that Derek would probably have consented to any request, explicit or implicit, by the government.** That he was crying, his father was knocked out and his older brother was not there, only serves to heighten the expectation of some inquiry by the officers.

*Barkovitz*, 29 F. Supp. 2d at 415(emphasis added).

Plaintiff pleaded that Defendants Sellner, Barberino, and Dionne's actions were objectively unreasonable under the circumstances. Like Derek in *Barkovitz*, Honestie was a minor at the time of the incident. Both Plaintiff and a family friend repeatedly informed GRPD officers that she was a child. PageID.7, ¶¶54-55, PageID.8-9, ¶68. Yet, she was surrounded by a number of officers[4] who had their guns drawn and were yelling commands. PageID.7, ¶¶50, 52; PageID.8, ¶¶56-63; PageID.9, ¶¶72, 74. At a minimum, the GRPD should have asked Plaintiff, as Honestie's mother, for permission to search (and question) her, because, as a minor, Honestie arguably did not have the capacity to consent to a search. And importantly, she posed no harm or threat to the officers or anyone. As *Barkovitz* indicated, a child cannot consent to a warrantless search under normal circumstances. Therefore, any related touching would, by definition, be a battery because the touching was non-consensual.

Additionally, Plaintiff pleaded facts to establish that Defendants Sellner, Barberino, and Dionne's actions were not in good faith, nor with an honest belief. Defendants handcuffed Honestie, although they knew she was a child and knew she was not armed and dangerous.

---

[4] It is unknown by Plaintiff exactly how many officers were on scene the evening of December 6, 2017, but as Plaintiff's Complaint states, there were at least three to four squad cars present and at least six officers present including Defendants Sellner, Barberino, and Dionne, as well as Sgt. Bush, and Officers Bloom and Martin. PageID.6, ¶¶36-41; PageID.9, ¶69.

Specifically, Defendant Sellner assaulted Honestie by pointing a gun at her, which placed her in reasonable apprehension that she would receive an immediate battery by Officer Sellner or any of the other officers on site who also had their guns drawn. PageID.2, ¶¶1, 8; PageID.3, ¶9; PageID.7, ¶¶50-53; PageID.17, ¶144. Defendant Barberino battered Honestie by handcuffing Honestie's hands behind her back. PageID.2, ¶¶1, 8; PageID.8, ¶60. Honestie was compliant but did not consent to the harmful and offensive touching. As she was being handcuffed, she repeatedly screamed and cried, "no." PageID.8, ¶61. Additionally, Defendant Dionne battered Honestie by touching her body, patting her down, and searching her for weapons. PageID.9, ¶71. Again, although Honestie was compliant with Defendant Dionne's request, given the disparity in age, size, maturity, and the show of force by all the GRPD officers on site, it is not far-fetched that any 11-year-old child would have consented to any request by an officer that evening.

Frankly, the legal assessment of whether Defendants Sellner, Barberino, and Dionne's actions were "objectively reasonable" is better suited to be decided at the summary judgment stage. However, at the pleading stage, Plaintiff's allegations regarding the claims of Assault and Battery by Defendant Sellner, Barberino, and Dionne are free from defect. Consequently, Defendants' Motion to Dismiss Plaintiff's claims of Assault and Battery should be denied.

K. Count XI - False Imprisonment: Facts were alleged that Defendants Barberino and Dionne's detainment of Honestie was unreasonable as they lacked reasonable suspicion or probable cause that she had committed a crime.

As a preliminary matter, Plaintiff incorporates by reference the argument made above regarding Count II - 42 U.S.C. § 1983 - False Arrest/False Imprisonment. Further, under Michigan law, a plaintiff must demonstrate the absence of probable cause to prevail in claims of malicious prosecution, false arrest, or false imprisonment. *See Moore v. Michigan Nat'l Bank*, 368 Mich. 71, 117 N.W.2d 105 (1962); *Blase v. Appicelli*, 195 Mich.App. 174, 489 N.W.2d 129 (1992); *Tope v.*

*Howe*, 179 Mich.App. 91, 445 N.W.2d 452 (1989). Probable cause generally exists where the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). The Sixth Circuit has stated:

> The Supreme Court has made clear that there is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the "factual and practical considerations of everyday life" that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur.

*United States v. Strickland*, 144 F.3d 412, 415 (6th Cir.1998) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

As argued above, Plaintiff not only pleaded that Defendants had no probable cause that Honestie had committed a crime (*e.g.*, PageID.1, ¶8; PageID.14, ¶112-115; PageID.15, ¶125; PageID.24, ¶183; PageID.28, ¶207), but she also pleaded the specific reasons why the GRPD officers had no probable cause. For example, Plaintiff alleged that Honestie did not match the description of GRPD's suspect, as she was African American (not Caucasian), 11 years old (not an adult), and was not wearing her hair in a ponytail bun (PageID.2, ¶3; PageID.9, ¶¶78-82). Additionally, Plaintiff also pleaded that Honestie had not committed a crime, was not in the process of committing a crime, was not resisting the GRPD officers, and was not attempting to flee. PageID.2, ¶¶5, 8; PageID.14, ¶¶114-115; PageID.13-PageID.14, ¶¶110 - 116; PageID.15, ¶121. Plaintiff also pleaded that: Defendant Sellner unlawfully restrained Honestie's liberty and freedom of movement by detaining her at gunpoint (PageID.30, ¶222); Defendant Barberino unlawfully restrained Honestie's liberty and freedom of movement by handcuffing her (*Id. at* ¶223); and,

Defendant Dionne unlawfully restrained Honestie's liberty and freedom of movement by placing her in a police car for approximately ten minutes (*Id*. at ¶224, PageID.27, ¶205c).

Plaintiff's False Imprisonment claims are properly pleaded against Defendants Sellner, Barberino, and Dionne. Consequently, Defendants' Motion to Dismiss Plaintiff's False Imprisonment claims should be denied.

L. Official Capacity claims against Defendants Sellner, Barbarino, and Dionne should not be dismissed as the categorization preserves Plaintiff's right to assert that the public entity pay damages caused by the individual officers.

A plaintiff can sue a defendant under § 1983 in that defendant's individual capacity, official capacity, or both. When a § 1983 plaintiff brings individual capacity claims against law enforcement officers, the individual officers may be held personally responsible for paying monetary damages to a prevailing plaintiff. *See Hafer v. Melo,* 502 U.S. 21 (1991). The damages may include compensatory and punitive damages. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). By contrast, official capacity claims brought against law enforcement officers, which are considered claims against the municipality that the officer represents, require any damages awarded to be paid by the public entity. *See Curtis v. Breathitt Cnty. Fiscal Ct.*, 756 F. App'x 519, 525 (6th Cir. 2018), *see also Kentucky,*473 U.S. at 165.

If official capacity claims against the law enforcement officers are dismissed at this stage, and later, the officers are found liable for violations of Honestie's constitutional rights, the municipality could refuse to satisfy any judgment on behalf of the officers because the official capacity claims have been dismissed. This could leave the officers personally liable for the misconduct and potentially leave Plaintiff with an unsatisfied judgment if Plaintiff prevails at trial.

Additionally, if the official capacity claims are to be treated as claims against the municipality, then allowing the claims to proceed presents absolutely no burden on any of the

defendants. No additional defenses are available to the municipality or the officers because of an official capacity claim. Likewise, allowing official capacity claims to proceed will not present any additional claims for damages to Plaintiff. Ultimately, if official capacity claims are to be treated the same as suing the municipality, then allowing the claims to proceed in tandem and concurrent with Plaintiff's claims against The City will not prejudice Defendants or create any need for additional discovery.

## V. CONCLUSION AND RELIEF REQUESTED

In reviewing Defendants' Motion to Dismiss, the Court must view Plaintiff's Complaint in the light most favorable to Plaintiff and take all well-pleaded factual allegations as true. As indicated above, Plaintiff's Complaint is well-pleaded, and Defendants' Motion to Dismiss should be **DENIED**. Additionally and/or alternatively, in the interest of justice, Plaintiff should be afforded the opportunity to amend her Complaint pursuant to FRCP 15.

Respectfully submitted,

Dated: March 4, 2024

By: *s/Stephen R. Drew*

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

# INDEX OF EXHIBITS

| **Exhibit** | **Description** |
|---|---|
| Exhibit 1 | *Rideout v. Shelby Twp.*, --- F. Supp. 3d ----, No. 22-11597, 2023 WL 5917392, at *2 (E.D. Mich. Sept. 11, 2023) |
| Exhibit 2 | *Streeter v. Macomb County*, 2023 WL 1784745 (E.D. Mich. Feb. 6, 2023) |

**CERTIFICATE OF SERVICE**

The foregoing document was filed electronically on the 4th day of March 2024 in accordance with the Court's ECF system. Notice of this filing will be sent to all parties by operation of the Court's ECF system.

Respectfully submitted,

Dated: March 4, 2024

By: *s/Stephen R. Drew*

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com