**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION**

WHITNEY HODGES,
as Personal Representative of the
ESTATE OF HONESTIE HODGES,

Plaintiff,

v.

CITY OF GRAND RAPIDS;
OFFICER SPENCER SELLNER
(individual and official capacity);
OFFICER ANTHONY BARBERINO
(individual and official capacity); and,
OFFICER JEFFREY DIONNE
(individual and official capacity),

Defendants.

Case No. 1:23-cv-01230-HYJ-SJB

Honorable Hala Y. Jarbou

_______________________________________/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
*Attorneys for Plaintiff*
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

Elizabeth J. Fossel (P41430)
Sarah J. Hartman (P71458)
City of Grand Rapids Law Department
*Attorney for Defendants City of Grand Rapids, Spencer Sellner, Anthony Barberino, and Jeffrey Dionne*
300 Monroe Avenue NW, Suite 620
Grand Rapids, Michigan 49503
Phone: (616) 456-3099
E-mail: efossel@grand-rapids.mi.us
E-mail: shartman@grand-rapids.mi.us

_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# EXHIBIT 1

2023 WL 5917392
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Willie J. RIDEOUT, Jr., Plaintiff,
v.
SHELBY TWP., et al., Defendants.

Case No. 22-11597
|
Signed September 11, 2023

**Synopsis**
**Background:** Arrestee brought action against township, police department, police chief, and police officers, asserting § 1983 claims for municipal liability, First Amendment retaliation, unreasonable search and seizure, excessive force, violation of equal protection, and malicious prosecution, and state law claims for battery, gross negligence, false arrest, and false imprisonment, arising from arrest after series of protests against police chief. Defendants moved to dismiss for failure to state a claim.

**Holdings:** The District Court, F. Kay Behm, J., held that:

arrestee sufficiently alleged that officers, their supervisors, and police chief were personally involved in constitutional violations;

probable cause for arrest would not bar First Amendment retaliation claim against officers in their official capacity;

arrestee sufficiently alleged the lack of probable cause for arrest;

arrestee sufficiently alleged that unidentified "final policy maker" ratified unconstitutional acts, as basis for municipal liability;

arrestee failed to state a claim for municipal liability for failure to train;

Michigan law did not allow gross negligence claim independent from intentional tort claims; and

arrestee stated claim under Michigan law for malicious prosecution.

Motion granted in part and denied in part.

**Attorneys and Law Firms**

Azzam E. Elder, Dearborn, MI, Nineveh Korkis Taweel, The Korkis Law Firm, PLLC, Dearborn, MI, for Plaintiff.

Elizabeth P. Roberts, Raechel M. Badalamenti, Kirk, Huth, Lange & Badalamenti, P.L.C., Clinton Township, MI, for Defendants Shelby Township, Shelby Township Police Department, Robert Shelide, Joseph Wojcik, Mark Benedettini, Terrance Hogan, Kevin Bailey, Ermir Vila, Justin Goebel, Robert Heisler.

**OPINION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF No. 36)**

F. Kay Behm, United States District Judge

## I. PROCEDURAL HISTORY

***1** Plaintiff, Willie J. Rideout, Jr., initially filed this civil rights complaint on July 14, 2022. (ECF No. 1). Rideout has since twice amended his complaint and the Second Amended Complaint (SAC) is now the operative complaint. (ECF No. 30). Defendants Shelby Township, Shelby Township Police Department, Chief of Police Robert Shelide, Sgt, Joseph Wojcik, Sgt. Mark Benedettini, Det./Lt. Terrance Hogan, Sgt. Kevin Bailey, Det. Ermir Vila, Ofc. Justin Goebel and Det./Sgt. Robert Heisler move for partial dismissal of the SAC. (ECF No. 36). This matter is fully briefed, and the court held a hearing on August 30, 2023. For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part the motion to dismiss the SAC.

## II. FACTUAL BACKGROUND

This case arises from Rideout's arrest after a series of protests against the Shelby Township Chief of Police, Robert Shelide, a defendant here. On June 16, 2020, Chief Shelide was suspended for thirty days after having made multiple posts on a Twitter Account using a pseudonym supporting racist ideals and endorsing police brutality. (ECF No. 30, ¶¶ 15-20). On July 1, 2020, July 15, 2020, and July 20, 2020, Rideout participated in protests against Shelide. *Id.* at ¶¶ 31, 32. On the

evening of July 20, 2020, local media interviewed Rideout, who criticized Shelide's return from suspension and called for his resignation. *Id.* at ¶ 33.

According to the SAC, in response to Rideout's criticisms, the named Defendants worked together to retaliate against him for exercising his constitutional rights under the First Amendment. (ECF No. 30, ¶ 34). Rideout alleges that Shelide and the police officer defendants colluded to conduct a pretextual investigation of his activities on July 20, 2020 to fabricate a misdemeanor charge of violating Mich. Comp. Laws § 257.602 (failure to comply with the order or direction of a police officer) and presented false or misleading facts to the prosecutor's office. *Id.* at ¶ 35. No other protester was arrested for their participation in the July 20, 2020 protests/demonstrations. *Id.* at ¶ 37. The SAC alleges that Defendant Ermir Villa's police report, which served as the basis for the warrant, was untruthful and failed to include exculpatory evidence. *Id.* at ¶ 43. The SAC further alleges that Villa, the other Defendant officers, and Shelide were all aware at the time the arrest warrant was obtained that Rideout sought to cooperate with officers at the protest, asked for more time to disperse the crowd, and the officer on the ground granted that request. *Id.* at ¶ 44. Despite this knowledge, Defendants colluded to omit this information from the presentation of evidence to the prosecutor and magistrate who issued the warrant. *Id.* at ¶ 45.

In 2021, Rideout filed a motion to dismiss the charges based on a lack of probable cause and insufficient evidence. (ECF No. 30, ¶ 79). After an evidentiary hearing, the state court judge dismissed the charges, ruling:

a) "I would note just as an aside, that I thought it was somewhat unusual -- somewhat unusual for the Defendant ("Rideout") to be charged after the fact and arrested several days later rather than the date of the alleged incident, which typically would be the case and was the case on some of these other matters." *People of the State of Michigan v. Willie James Rideout*, Case No. 20-1161ST, Evidentiary Hearing April 18, 2022, Transcript pg. 4.

***2** b) "As I've indicated, I spent a lot of time looking at the videos. The video shows a -- a number of times where the Defendant, Mr. Rideout, did discuss issues with the police officers involved. It did seem like he was trying to control the crowd; control the participants. At one point, directing 6 them off of the roadway, and it did appear that he was at -- at certain times assisting the police officers. I did see that he was, in fact, thanked by one of the police officers for that assistance." Transcript pg. 5.

c) "I just did not feel that there was sufficient evidence under the circumstances to sustain the charge and to go to trial on the matter." Transcript pg. 6-7.

d) Case was dismissed.

(ECF No. 30, ¶ 82). This lawsuit followed on July 14, 2022.

## III. ANALYSIS

A. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] ... [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id.* at 678, 129 S.Ct. 1937. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679, 129 S.Ct. 1937. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d

545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id.* at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether " 'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

***3** Defendants have attached a copy of the police report and videos of the protests and Rideout's arrest. Defendants point to *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) in support. In *Bailey*, the court considered a security video of an armed robbery, which the plaintiff had claimed contradicted the affidavit's description of the perpetrator. *Id.* The court considered the video for two reasons: first, it was mentioned throughout the complaint and second, it captured the entire incident. *Id.* Here, both the police report and the videos are mentioned in the complaint and there is no suggestion that the videos are incomplete. Accordingly, the court may consider this evidence in evaluating the motion to dismiss. *See also, Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss.").

B. <u>Claims Against Defendants Wojcik, Benedettini, Hogan, Bailey, Goebel, and Heisler</u>

These Defendants argue that the SAC does not sufficiently identify their personal involvement in the events identified in the complaint. Defendants contend that they did not participate in seeking charges, arresting or prosecuting Rideout. (ECF No. 30, Exs. A-C). Instead, only Defendant Vila requested a warrant from the Prosecutor. *Id.* at Ex. B, p. 18. None of these Defendants effectuated Rideout's arrest or participated in the prosecution. *Id.* at Exs. A-B. Accordingly, Defendants argue they should be dismissed from this suit. Rideout argues that "all counts are valid at this time as no discovery has been conducted." (ECF No. 43, PageID.562).

To prevail on a § 1983 claim, a plaintiff must show personal involvement by the defendant in the constitutional violation. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995) (plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability). The theory of respondeat superior is not applicable in the context of § 1983 liability. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). A claimed constitutional violation must be based on active unconstitutional behavior. *Id.*; *see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.' "). Conclusory allegations are insufficient to state a civil rights claim under § 1983. *See, e.g., Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003). "A plaintiff must 'plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A plaintiff falls short if he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]' " *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. 1937).

Rideout's argument that he can wait until discovery is conducted to identify the personal involvement of each Defendant is contrary to the above-cited cases and he offers no authority in support of this notion. However, the SAC alleges as follows with respect to these Defendants:

> 44. Defendant Ermir Villa, along with every other individual Defendant officer, their bosses and Defendant Shelide, at the time that information was presented to the prosecutor and magistrate for obtaining an arrest warrant of Plaintiff, were aware that on July 20, 2020, Plaintiff had sought to cooperate with police officers at the protest,


© 2024 Thomson Reuters. No claim to original U.S. Government Works.

asking for more time to disperse the crowd, which the officer present on the street granted.

***4** 45. Despite this knowledge of facts that directly contradicted their proposed criminal charge, the individual Defendant police officers, at the direction of their bosses and Defendant Shelide, colluded to omit this information from their presentation of evidence to the prosecutor and magistrate in order to obtain the warrant against Plaintiff.

46. Defendant Robert Heisler, who was acting on behalf of his bosses and Defendant Shelide, ordered Defendant Villa to put together charges against Plaintiff.

(ECF No. 30, PageID.310).

In evaluating whether these allegations are sufficient, the case of *Kreps v. Michigan Unemployment Ins. Agency*, No. 22-12020, 2023 WL 4494339, at *11 (E.D. Mich. July 12, 2023) is instructive. In *Kreps*, District Judge Mark A. Goldsmith evaluated the argument that the plaintiff's complaint did not sufficiently allege the personal involvement of individual officers regarding a due process claim. *Id.* at *10-11. Judge Goldsmith found that the plaintiff had done so because the complaint alleged that the "individual Defendants were aware of and responsible for the processes that resulted in the deprivation of Plaintiffs' protected interests without providing any opportunity to be heard, and thus that they implicitly authorized, approved, or knowingly acquiesced in the policies and procedures at issue." *Id.* at *11 (internal quotation marks omitted). Similarly here, Rideout has alleged that these Defendants were aware of the alleged misconduct at issue and, more importantly, participated in that misconduct. *See Taylor*, 69 F.3d at 80-81. While such allegations will need to be substantiated to survive a motion for summary judgment, such allegations are sufficient to survive a motion to dismiss. *See Kreps*, at *11 (citing *Cahoo v. SAS Inst., Inc.*, 71 F.4th 401 (6th Cir. 2023)).

C. Counts I-III

Count I alleges that Rideout was arrested, charged, and prosecuted in retaliation for exercising his First Amendment speech rights. Count II alleges both an unreasonable search and seizure and excessive force claims under the Fourth Amendment. And in Count III, Rideout alleges that he was falsely arrested and falsely imprisoned in violation of state law. Defendants argue that all these claims are barred because Rideout has failed to plead and prove a lack of probable cause for his arrest.

Although probable cause generally will defeat a § 1983 First Amendment retaliation claim, *see Wood v. Eubanks*, 25 F.4th 414, 428 n. 4 (6th Cir. 2022), two exceptions exist where, as here, the defendant officers are being sued in their official capacity. *Bridgewater v. Harris*, No. 16-14112, 2020 WL 813388, at *7 (E.D. Mich. Feb. 19, 2020). For the first exception to apply, the Supreme Court held that (1) there must be an "official municipal policy of intimidation"; (2) the municipality must have "formed a premeditated plan" to retaliate against the plaintiff; (3) the plaintiff must present "objective evidence of a policy motivated by retaliation"; (4) there must be "little relation" between the protected speech and the offense that led to the arrest; and (5) the protected speech must be "high in the hierarchy of First Amendment values," such as the freedom to petition. *Lozman v. City of Riviera Beach*, ––– U.S. ––––, 138 S. Ct. 1945, 1954-55, 201 L.Ed.2d 342 (2018) (internal quotation marks omitted). The second exception applies where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," the existence of probable cause will not preclude a First Amendment retaliation claim. *Nieves v. Bartlett*, ––– U.S. ––––, 139 S. Ct. 1715, 1727, 204 L.Ed.2d 1 (2019). Rideout's SAC alleges that he was the only protestor at the July 20, 2020 protest who was arrested, despite the fact that multiple protestors engaged in the same actions as he did. (ECF No. 30, ¶ 63). The SAC further alleges that Defendants' investigation of him was initiated as a pretext to execute their plan to retaliate against him and intimidate him for exercising his First Amendment rights to protest Shelide. (ECF No. 30, ¶ 65). This suggests that Rideout's retaliation claim falls within the exception outlined in *Lozman* and the motion to dismiss Count I is denied for this reason. Moreover, as discussed below, the SAC has sufficiently alleged a lack of probable cause such that a claim would also survive on this basis.

***5** Counts II is based solely on the Fourth Amendment, not the First Amendment and thus, the above-described exceptions do not apply. *Gorcaj v. Medulla*, 51 F. App'x 158, 159 (6th Cir. 2002) (stating that "a section 1983 claim based on theories of false arrest, false imprisonment, and malicious prosecution stands on the Fourth Amendment"); *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (stating that "[a] person who has been the victim of an unlawful arrest or wrongful seizure under the color of law has a claim based on the Fourth Amendment guarantee that government officials may not subject citizens to searches or seizures without proper authorization"). And claims for false arrest

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

and false imprisonment fail when there is probable cause to support the arrest. *Frantz v. Village of Bradford*, 245 F.3d 869, 873 (6th Cir. 2001) (Section 1983 claims based on theories of false arrest/false imprisonment or illegal seizure derive from the Fourth Amendment and turn on the question of probable cause.); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (finding the existence of probable cause for arrest forecloses false arrest claims); *Ingram v. Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999) (internal citations omitted) (To constitute an unreasonable seizure in violation of the Fourth Amendment, an arrest must be made without probable cause). The same is true for Rideout's state law claims for false arrest and false imprisonment set forth in Count III. *See Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351 (2003) ("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause. If the arrest was legal, there has not been a false arrest or a false imprisonment.")

In the SAC, Rideout alleges that Defendants "omitted crucial, known details of the protest, including that Plaintiff had sought to cooperate with officers on scene, had directed protesters out of the street himself on behalf of the police, and, crucially, obtained permission from officers on scene for more time to disperse protesters from the street." (ECF No. 30, ¶ 127). Rideout points out that a facially valid warrant is not always sufficient to merit summary judgment or dismissal in an action brought pursuant to § 1983 when evidence exists that a defendant intentionally misled or intentionally omitted information at a probable cause hearing for an arrest or a search warrant provided that the misleading or omitted information is critical to the finding of probable cause. *See Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998); *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). The SAC, ¶¶ 43-45 and 127, then asserts that Defendant Vila left "exculpatory evidence" out of his police report when submitting his warrant request, namely that Rideout sought to cooperate and was granted more time to disperse the crowd by an officer and that Defendants knew this. Defendants contend that the court should reject Rideout's contention because the video of the protest shows that he did not obey police commands and, therefore, there is probable cause to support the arrest warrant. (ECF No. 36, Ex. C).

A police officer has probable cause to arrest a suspect if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) ("Insofar as the question of probable cause here is a close one, reasonable officials could disagree as to whether probable cause existed. Thus, the defendant officers are entitled to qualified immunity on Thacker's Fourth Amendment seizure claim.") (internal citations omitted). "Generally, probable cause exists when the police have 'reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (alteration in original) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). Moreover, an officer is required to "consider the totality of the circumstances," and cannot look only at the evidence of guilt while ignoring all exculpatory evidence when assessing probable cause. *Id.* at 318. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989)).

***6** Even considering the evidence offered by Defendants (which in the view of the court is not inconsistent with the allegations in the SAC), neither party offers any type of analysis regarding probable cause and whether the evidence that "Plaintiff had sought to cooperate with officers on scene, had directed protesters out of the street himself on behalf of the police, and, crucially, obtained permission from officers on scene for more to time to disperse protesters from the street," (ECF No. 30, ¶ 127), would alter the probable cause analysis. In these circumstances, viewing the evidence in the light most favorable to Rideout, and given that the video does not contradict the SAC, the court cannot say there is only one reasonable determination possible regarding probable cause, and thus the complaint has sufficiently alleged a lack of probable cause. *See Pyles*, 60 F.3d at 1215. Accordingly, the motion to dismiss Counts I, II and III is denied.[1]

D. <u>Claims Against Shelby Township/Official Capacity Claims Against Shelide and Other Individual Defendants</u>

Rideout sues Shelby Township and the individual Defendants in their official capacity. "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Courts within the Sixth Circuit consistently

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

dismiss official-capacity claims against municipal officials that are duplicative of claims asserted by the plaintiff against the municipal entity itself. *See e.g., Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848-49 (E.D. Mich. 2014) ("[B]ecause Cavanaugh has raised claims against Otsego County, the claims against [the county's sheriff and undersheriff] in their official capacities are duplicative and will be dismissed."), aff'd (6th Cir. 14-1155, Dec. 12, 2014); *Swartz Ambulance Serv., Inc. v. Genesee Cnty.*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009) ("[C]laims brought against Genesee Board of Commissioners and individual Commissioners pursuant to 42 U.S.C. § 1983 are duplicative of the claim against Genesee County because official capacity suits are the equivalent of a suit against the municipality. Accordingly, the Court dismisses the Board and individual Commissioners from those claims under 42 U.S.C. § 1983.") (internal citation omitted); *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 541-42 (W.D. Ky. 2020) (finding that "dismissal of official-capacity claims is permitted and judicious when the reasonable entity is also named as a defendant in the case.") (citation omitted). This practice has been upheld by the Sixth Circuit. *See e.g., Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996) ("We will [ ] affirm the dismissal of the official capacity claims against [three municipal officials] because a suit against an official of the state is treated as a suit against the municipality."); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 328 (6th Cir. 2013) ("Plaintiffs' claims against Bedell in his official capacity were properly dismissed because they were in actuality claims against the Township of Waterford, which is itself a defendant."); *Foster v. Michigan*, 573 F. App'x 377, 389-90 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."). Accordingly, the court dismisses all official capacity claims against the individual Defendants as duplicative of the claims against Shelby Township.

Next, the court will address the claims asserted against Shelby Township. While Rideout names Shelby Township in a number of counts, only those that arise under *Monell* are potentially viable. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 700-01, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities are "persons" subject to suit under § 1983. However, such a claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018. The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). To the extent Rideout attempts to assert any other claims against Shelby Township besides the *Monell* claims identified in Counts IV, V, and VI, and the *Lozman* First Amendment retaliation claim in Count I, those claims must be dismissed. There are four ways a plaintiff may prove the existence of a municipality's illegal policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

***7** Rideout's claim in Count IV is based on the ratification theory of municipal liability, which, contrary to Defendants' arguments, does not require proof of a pattern or custom. *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 537 (W.D. Ky. 2020). Instead, ratification of a single violative act is enough for municipal liability to attach. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). There are two ways an official acting with final decision-making authority may ratify the unconstitutional acts of its employees. *Id.* at 537-538. The first is through "affirmative approval of a particular decision made by a subordinate." *Id.* at 538 (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993)). The second is by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Id.* (quoting *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020)). In Count IV, Rideout alleges that that an unidentified "final policy maker" has ratified the unconstitutional acts of Shelide, the other officers, and Shelby Township. (ECF No. 30, Count IV, PageID.339-341). Defendants move to dismiss this claim, asserting that Rideout failed to allege a pattern and thus, Count IV fails. However, as indicated above, a pattern is not required to state a ratification claim. Thus, Defendants' motion does not provide a basis for dismissal and the motion to dismiss Count IV is denied.

Next, Rideout asserts a failure-to-train claim in Count V of the SAC. (ECF No. 30, Count V, PageID.341-348). Count V alleges that Shelby Township failed to provide

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

training regarding probable cause so as to prevent wrongful arrests; failed to train/supervise its employees such that it was certain to result in wrongful arrests; failed to train its employees on how to avoid unconstitutional conduct; and failed to enforce its own rules resulting in the wrongful arrest of Rideout. *Id.* Rideout argues that as to "Count V, *Monell* liability is established by operation of law through Defendants SHELIDE's conduct as the highest-ranking final policymaking authority for SHELBY TOWNSHIP under which supervisory and regular line police officers knowingly participated in the unconstitutional violation of MR. RIDEOUT." (ECF No. 43, PageID.561). Rideout's argument does not connect the allegations in the SAC to the requirements of a failure to train claim, as discussed below.

A municipality may be liable under § 1983 for failure to train when it amounts to deliberate indifference. *Howell v. NaphCare*, Inc., 67 F.4th 302, 319 (6th Cir. 2023) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). To succeed on a failure-to-train claim, a plaintiff must show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id.* (quoting *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). Regarding the second prong, a plaintiff most commonly demonstrates a municipality's deliberate indifference by pointing to a failure to act "in response to repeated complaints of constitutional violations by its officers." *Id.* (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020)). But a plaintiff can rely on a single incident to establish liability in a narrow range of circumstances "if the risk of the constitutional violation is so obvious or foreseeable" that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it. *Id.* Rideout has not pointed to any prior similar constitutional violations, thus he has not plausibly alleged a failure to train under the first method. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)) (A failure-to-train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."). Further, Rideout does not point to any allegations in the SAC giving rise to a plausible inference that the need for training to avoid incidents like his wrongful arrest was so "obvious" that any failure to provide such training would have amounted to deliberate indifference. *See Linden v. City of Southfield, Michigan*, 75 F.4th 597, 606 (6th Cir. 2023).[2] Accordingly, he has failed to plausibly allege a failure to train claim and Count V is dismissed.

***8** Count VI is a *Monell* claim based on Shelby Township's customs or policies. (ECF No. 30, Count VI, PageID.348-353). According to the SAC, Shelby Township knowingly employed law enforcement officials like Shelide when it knew he had a propensity for abusing his authority, for encouraging excessive force against lawful protestors, and for retaliating against protestors; Shelby Twp had inadequate procedures investigating/disciplining police misconduct; Shelby Township failed to discipline police officers such that it is tantamount to encouraging misconduct, encouraged the "blue code of silence," and failed to investigate criminal cases which were later voluntarily dismissed. *Id.*

Defendants first argue that Rideout has not identified any legislative enactment or official agency policy. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Second, Defendants also assert "the wrongful conduct of a single officer without any policy-making authority [does] not establish municipal policy ..." *Collins v. City of Harker Heights*, 503 U.S. 115, 121–2, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). And here, according to Defendants, the SAC identifies only this instance of conduct by the Chief as the basis for action. (ECF No. 30, ¶ 176).

A custom or policy claim may only be brought when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. A plaintiff must show that the alleged conduct qualifies as a policy because *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. 2018. *Monell* liability may also attach where a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91, 98 S.Ct. 2018. A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn.*

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

*Area Local. Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). Thus, Defendants' first argument that Rideout fails to identify a formally adopted policy does not defeat the claim.

As to their second argument, Defendants' citation to *Collins* for the proposition that "the wrongful conduct of a single officer without any policy-making authority [does] not establish municipal policy" also misses the mark. In *Collins*, the Court noted in its holding "a county was responsible for unconstitutional actions taken pursuant to decisions made by the county prosecutor and the county sheriff because they were the 'officials responsible for establishing final policy with respect to the subject matter in question.' " *Id.* at 122, 112 S.Ct. 1061 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Rideout cites to *Gillespie v. City of Battle Creek*, 100 F.Supp.3d 623 (W.D. Mich. 2015), in support of his claim that Shelide is the final policymaker and thus, the Township is responsible for his decisions. As explained in *Gillespie*, mere "authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Id.* at 630 (quoting *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). Whether final authority to make municipal policy is vested in a particular official is a matter of state law. *Id.* (citing *Feliciano*, 988 F.2d at 655) (citations omitted). "This includes 'state and local positive law,' such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom." *Id.* (quoting *Feliciano*, 988 F.2d at 655) (citations omitted). In addition, "[o]fficials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority." *Id.* (quoting *Feliciano*, 988 F.2d at 655). In *Gillespie*, the plaintiffs' claim against the City was based on the assertion that the Chief of Police was the decisionmaker for that department and his decision to put surveillance cameras in the women's locker room constituted municipal policy. *Id.* at 629. The City argued that the plaintiffs did not allege facts to show that the Police Chief had final authority to establish municipal policy and the City Charter and the Administrative Code fixed such authority in the City Commission. *Id.* at 630. The plaintiffs pointed out that the Administrative Code required the department head to adopt and enforce department rules and regulations and did not explicitly give the city manager final authority on internal affairs investigations; as such, the court concluded that whether the police chief had final authority with respect to how the investigation was conducted involved factual issues not before the court in a motion to dismiss. *Id.* at 630.

***9** In response to Rideout's *Gillespie* argument, Defendants argue that under state law, the police chief of a charter township does not have final decisionmaking authority. A public official cannot be considered to have final policymaking authority unless the official's "decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). Here, Defendants point to Mich. Comp. Laws § 42.12, which provides that the "township board shall make all necessary rules for the government of the township police force and its members and shall prescribe the powers and duties of policemen." Defendants argue, therefore, that unlike in *Gillespie*, nothing in the Township's code suggests that anyone other than its Board makes final policy. The court finds it unlikely that the Police Chief of Shelby Township is without any authority to make any final decision on any topic and that the Township Board makes all final law enforcement decisions, without delegating any final decision-making authority to the Chief of Police. At the hearing, Defendants' counsel explained that some authority is delegated to the Chief of Police via the Township Charter, but that the Township retained oversight authority,[3] taking these circumstances outside the parameters of *Pembaur*, which restricts municipal liability to decisions by officials with authority to make "final government policy." *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292. Neither party has sufficiently identified what "local ordinances, regulations, charters, practices, and customs" might play into the determination of who is the final decision maker here. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Nor is there any authority suggesting that arrest decisions are reviewable by the Township Board. Thus, whether Chief Shelide or another person had final authority regarding Rideout's arrest or prosecution, this question "involves factual issues that are not before the Court at this time." *Saal v. City of Wooster*, 2020 WL 836498, at *8 (N.D. Ohio Feb. 20, 2020) (citing *Gillespie*, 100 F. Supp. 3d at 630). The court has rejected both grounds identified by Defendants in support of their motion to dismiss Count VI and given that Defendants have not otherwise disputed that the SAC contains sufficient facts to state a municipal liability claim, the motion to dismiss Count VI is denied.

E. Remaining Claims Against Police Chief Shelide

Defendants argue that Counts I (First Amendment Retaliation), IV (Ratification), VI (*Monell*), XII (Concert of Action), XIII (Equal Protection), and XIV (Conspiracy) of the SAC brought against Shelide must be dismissed based on his lack of personal involvement. As discussed below, Counts XII and XIV are dismissed because Rideout failed to respond to the motion to dismiss those claims and thus, they will not be addressed further. Counts IV and VI were addressed above and apply only to the Township. Thus, only Counts I and XIII need be addressed here.

According to Defendants, the SAC makes it clear that Shelide's purported liability is based on respondeat superior, which is insufficient to state a claim under § 1983. *See* ECF No. 30, ¶ 96 ("Defendant Shelide, by virtue of his position, is responsible for the policies and practices which violate First Amendment rights or supporters of police reform, and against him individually. As the top cop and supervisor, he should be held personally liable for directly participating in unconstitutional conduct, or for promulgating an unconstitutional policy carried out by a subordinate employee."); ¶ 97 ("Defendant Shelide should also be liable based upon knowledge and acquiescence of, or deliberate indifference to, his department's and his subordinates' conduct."). However, the SAC also alleges that Shelide was personally involved in the decision to bring charges against Rideout:

> 35. In particular, Defendant SHELIDE and the individual Defendant police officers colluded to conduct a pretextual investigation of Plaintiff's activities on July 20, 2020, to fabricate a misdemeanor charge for violation of Section 257.602 (Compliance with order or direction of police officer), to present a false and/or misleading set of facts to the prosecutor's office[.]
>
> 36. Specifically, between July 20 and July 22, 2020, Defendants worked together to review hours of video, and filed supplemental criminal reports to target Plaintiff by bringing charges against him that are not brought under similar circumstances in order to deprive Plaintiff of his constitutional rights and to chill his type of free speech.
>
> * * *
>
> 44. Defendant Ermir Villa, along with every other individual Defendant officer, their bosses and Defendant Shelide, at the time that information was presented to the prosecutor and magistrate for obtaining an arrest warrant of Plaintiff, were aware that on July 20, 2020, Plaintiff had sought to cooperate with police officers at the protest, asking for more time to disperse the crowd, which the officer present on the street granted.
>
> ***10** 45. Despite this knowledge of facts that directly contradicted their proposed criminal charge, the individual Defendant police officers, at the direction of their bosses and Defendant Shelide, colluded to omit this information from their presentation of evidence to the prosecutor and magistrate in order to obtain the warrant against Plaintiff.
>
> 46. Defendant Robert Heisler, who was acting on behalf of his bosses and Defendant Shelide, ordered Defendant Villa to put together charges against Plaintiff.

(ECF No. 30, PageID.308, 310). As discussed in detail above with regard to the officer defendants in Section III.B, these allegations sufficiently identify Shelide's personal involvement. Rideout has alleged that Shelide was aware of the alleged misconduct at issue *and participated* in that misconduct. *See Taylor*, 69 F.3d at 80-81. Again, while such allegations will need to be substantiated to survive a motion for summary judgment, such allegations are sufficient to survive a motion to dismiss. *Kreps*, at *11. Thus, the court denies the motion to dismiss Counts I and XIII.

F. Count VII – Battery

In Count VII, Rideout alleges that Defendants, in executing the arrest, "physically assaulted Plaintiff, through the execution of an unlawfully-obtained arrest warrant whereby the Defendant officers, including those who did not physically execute the warrant, caused Plaintiff to be touched offensively by arresting officers, causing Plaintiff humiliation, suffering, apprehension, and emotional distress, and placed him in immediate fear for his life." (ECF No. 30, Count VII, ¶ 184). Defendants argue that Count VII should be dismissed because, at best, Rideout alleges "mere touching" incidental to the arrest and fails to describe the alleged battery or force used.

Under Michigan law, battery is defined as "willful and harmful or offensive touching of another which results from an act intended to cause such contact." *Johnson v. City of Lincoln Park*, 434 F. Supp. 2d 467, 481 (E.D. Mich. 2006) (citing *VanVorous v. Burmeister*, 262 Mich. App. 467, 482-83, 687 N.W.2d 132 (2004), overruled on other grounds by *Odom v. Wayne Cty.*, 482 Mich. 459, 760 N.W.2d 217 (2008)). Arresting officers "may use reasonable force to effectuate a lawful arrest." *Spicer v. Michigan*, 2020 WL 12443428

(E.D. Mich. May 19, 2020) (quoting *Webb v. City of Taylor*, 2002 WL 31947931, at *3 (Mich. App. Dec. 3, 2002)) (citing *Young v. Barker*, 158 Mich. App. 709, 722–23, 405 N.W.2d 395 (1987)). But "if the force used is excessive, a police officer may be held liable for assault and battery despite the validity of the arrest." *Id.* (quoting *Webb*, 2002 WL 31947931, at *3) (citing *Delude v. Raasakka*, 391 Mich. 296, 301–02, 215 N.W.2d 685 (1974)). The SAC does not plead any facts supporting Rideout's claim that the physical force used during the arrest was excessive. Indeed, in the response to the motion to dismiss, Plaintiff merely reiterates that Defendants "committed a battery ... through the physical, unlawful arrest" of Rideout. (ECF No. 43, PageID.562). This meager description, along with that in the SAC, are not sufficient to state a claim for battery. *See e.g., Fairbanks v. City of Trenton*, 2016 WL 51223, at *4 (S.D. Ohio Jan. 5, 2016) (Allegations that the officers "forcefully" laid hands on the plaintiff, handcuffed him, and physically placed him in the police vehicle, without more, were not sufficient to state a claim for unreasonable use of force to effectuate a lawful arrest.); *Adams v. Jones*, 2016 WL 4257368, at *3 (W.D. Ky. Aug. 11, 2016) (Motion to dismiss granted where the plaintiff's allegation that he was "assaulted" by officers during his arrest was conclusory and failed to "describe with reasonable particularity the specific incident of alleged force or his resulting injuries.").[4] Further, Rideout's counsel conceded at the hearing that he did not have a factual basis on which to assert a battery claim. Consequently, Count VII must be dismissed for failure to state a claim for battery. Given the foregoing conclusion, Defendants' other arguments regarding this count need not addressed.

G. Count VIII – Gross Negligence

***11** Defendants argue that Rideout's gross negligence claim is barred by *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011), in which the Sixth Circuit held that a plaintiff's allegations of excessive and intentional force could not support a separate claim of gross negligence under Michigan law because they were "fully premised" on his intentional tort claims. The court reasoned that "[a]lthough establishing that a governmental official's conduct amounts to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action." *Id.* Accordingly, when a court is faced with claims of gross negligence, it must look "beyond the procedural labels in the complaint and determine the exact nature of the claim" and "[e]lements of intentional torts may not be transformed into gross negligence claims." *Norris v. Police Officers*, 292 Mich.App. 574, 808 N.W.2d 578 584 (2011). In response, Rideout asserts that his gross negligence claim is "an alternative theory of liability based on Defendants' violation of his First Amendment rights." (ECF No. 43, PageID.562-63).

Rideout does not offer any analysis exploring the nature of a First Amendment retaliation claim and how it fits within the parameters of a permissible gross negligence claim. For example, in *Lippett v. Adray*, 2023 WL 3774508, at *5 (E.D. Mich. June 2, 2023), District Judge Paul D. Borman explored the rule of *VanVorous*, which held that a complaint alleging an intentional tort cannot simultaneously plead a claim for negligence while relying on the same set of facts. Judge Borman acknowledged that a gross negligence claim based on the same facts as an excessive force claim could not lie. *Id.* But he also noted that where the gross negligence claim is based on the same facts as a constitutional deliberate indifference claim, that claim will not run afoul of *VanVorous* "because deliberate indifference claims contain allegations of a mental state short of full intent and similar to that in negligence claims." *Id.* at *6. Looking at the proofs required for a First Amendment retaliation claim, it is more akin to an intentional tort than a negligence claim because the plaintiff must show that the defendant's actions were motived by the subjective desire to punish a person for exercising a constitutional right, as explained by the Sixth Circuit:

> [P]rotected speech causes an adverse action if the speech motivates an individual actor to take acts that then proximately cause an adverse action. Subjective motivation appropriately enters the picture on a retaliation claim because our concern is with actions by public officials taken with the intent to deter the rights to free expression guaranteed under the First Amendment. *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998) ("[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.") (internal quotation marks omitted). Thus, causation in retaliatory claims may really be considered a two-part inquiry: A plaintiff must show both (1) that the adverse action was proximately caused by an individual defendant's acts, *Siggers–El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005), but also (2) that the individual taking those acts was "motivated in substantial part by a desire to punish an individual for exercise of a constitutional right," *Thaddeus–X*, [*v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)].

*King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). The critical element of a First Amendment retaliation claim is that

the defendant has a mental state that is more like an intentional tort -- the subjective intent to punish the plaintiff. As with excessive force, this level of intent pushes this claim outside the scope of gross negligence. Therefore, the gross negligence claim fails and must be dismissed.

H. Count XI – Malicious Prosecution

A malicious prosecution claim fails "when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). Here, Defendants argue that they were not involved in any decision to bring charges and as long as the information submitted to the prosecutor was truthful, they cannot be liable for a malicious prosecution claim. *Skousen v. Brighton High Sch.*, 305 F.3d 520, 528-29 (6th Cir. 2002). They maintain that while the SAC alleges that false statements or omissions led to Rideout's arrest, this assertion is belied by the police report and the video evidence. As discussed in detail above, there are allegations that exculpatory evidence was not presented to the prosecutor. And viewing the evidence in the light most favorable to Rideout, the court cannot say there is only one reasonable determination possible regarding probable cause. *See Pyles*, 60 F.3d at 1215. Accordingly, the motion to dismiss this claim is denied.

I. Count X – Defamation

***12** Defendants contend that the SAC fails to state a claim as to defamation and further, that all Defendants are entitled to governmental immunity from state law tort claims under Mich. Comp. Laws § 691.1407. Rideout does not address the immunity issue. Defendants are correct that they are immune from this claim under state law. *See Cluley v. Lansing Bd. of Water & Light*, No. 264208, 2006 WL 551351, at *4 (Mich. Ct. App. Mar. 7, 2006) (The court declined to decide whether the plaintiff stated a claim for defamation because the individual defendant was entitled to immunity under Mich. Comp. Laws. § 691.1407(5)); *Hicks v. Washington*, No. 309148, 2013 WL 440100, at *1 (Mich. Ct. App. Feb. 5, 2013) (Governmental agency had absolute immunity from defamation claim under Mich. Comp. Laws § 691.1407(1)); *Wallace v. Recorder's Ct. of Detroit*, 207 Mich. App. 443, 447, 525 N.W.2d 481 (1994) (Dismissal of defamation claim warranted given lack of facts supporting an inference that the defendant was not engaged in the exercise of a governmental function when the alleged defamatory statement was made.). Thus, the motion to dismiss Count X is granted.

J. Count XIII – Equal Protection

Count XIII of the SAC attempts to state an Equal Protection claim utilizing a theory of "selective enforcement" on the basis of Rideout's race or advocacy for the Chief's resignation. (ECF No. 30, ¶¶ 235, 239). The Equal Protection Clause prohibits purposeful discrimination in the enforcement of laws. Discrimination is purposeful "if it is intended to accomplish some forbidden aim." *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). One such "forbidden aim" is the selective enforcement of laws because of race. To establish such a claim, the plaintiff must prove (1) that a particular official has singled out a person belonging to an identifiable group and (2) that this same official initiated a prosecution with a discriminatory purpose. *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991). Additionally, there must be a pattern of disparate treatment. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003).

Defendants argue that Rideout cannot state such a claim because the evidence shows that he was in a class by himself. That is, no other protestor in the history of Shelby Township has ever "utilized a bullhorn to command a large group of gathered citizens to disobey direct police orders and enter the busy main highways putting life and limb at risk." (ECF No. 36, PageID.421). Defendants cite the police report in support of what the court can only describe as absolute speculation. Defendants further argue:

> Indeed, on July 1 and again on July 20, it was Rideout only who directed an otherwise peaceful group or [sic] protestors to "take to the streets," to block traffic "by any means necessary" including use of their own vehicles and even to "take a knee" in the middle of a busy roadway resulting in the blocking of both directions of travel. **Ibid, p. 5-7.** In doing so, Rideout directly disobeyed the lawful command of Officers as demonstrated on dash cam videos that are part of the public record. **Video at Ex. C.** It was solely on this that Det. Vila requested a warrant for Rideout's arrest on a charge of disobeying a lawful police command. **Ex. B, p. 1-18.** It certainly was not race that motivated Det. Vila given there were Caucasian and African American protestors who followed Rideout's commands, not arrested [sic]. **See e.g., Ex. D - Video.** And, it was not message-based motivation where all protestors that day had the same message yet it was only Rideout against whom charges were sought. **Ibid.**

(ECF No. 36, PageID.421-22, emphasis in original). Defendants liken this case to *Tomas-Pedro v. Holden*, 560 F. Supp. 3d 1068 (N.D. Ohio 2021), however, that selective enforcement claim was decided in the summary judgment context, not with respect to a motion to dismiss. Even if the court found it appropriate to address the scope of the arguments Defendants pose in the context of a motion to dismiss (which it finds are far afield from the limited reach of this court's review under Rule 12(b)(6)), the evidence Defendants rely on does not support its speculative and overreaching conclusions. Therefore, the motion to dismiss Count XIII is denied.

K. Count XII and XIV – Concert of Action/Conspiracy

***13** Rideout did not respond to the arguments made in the motion to dismiss these claims and thus, has abandoned them. *See* *Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (stating that the district court "correctly noted ... that [plaintiff] abandoned [certain] claims by failing to raise them in his brief opposing the government's motion to dismiss the complaint"); *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co.*, 88 F. Supp. 3d 775, 785 (E.D. Mich. 2015) ("A plaintiff abandons undefended claims."); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (stating that where a plaintiff fails to respond to an argument in a motion to dismiss, "the Court assumes he concedes this point and abandons the claim"). Accordingly, the motion to dismiss Counts XII and XIV is granted.

**IV. CONCLUSION**

For the reasons set forth above, the court **GRANTS** Defendants' motion to dismiss Count II (as to Excessive Force only), Count V (*Monell* Failure to Train), Count VII (Battery), Count VIII (Gross Negligence), Count X (Defamation), Count XII (Concert of Action), Count XIV (Conspiracy), all official capacity claims against the individual Defendants, and all claims against Shelby Township except Counts I, IV and VI. The remainder of Defendants' motion to dismiss is **DENIED**.[5]

**SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2023 WL 5917392

Footnotes

1 However, to the extent that Rideout attempts to bring an excessive force claim, it is dismissed for the reasons set forth in Section III.F addressing his battery claim. *See* n. 3, *infra.* Further, Rideout's counsel conceded at the hearing that he had no factual basis on which to assert an excessive force claim.

2 To the extent Count IV also alleges a failure-to-train claim, it also fails for these reasons.

3 In particular, counsel pointed to the Township Board's decision to suspend Shelide for his Twitter activity in support of the claim that the Board has final decisionmaking authority. This Board action does not address, however, whether and to what extent the Board had final decision-making authority over arrests and prosecutions, which is the issue presented in this lawsuit.

4 To the extent that Rideout brings an excessive force claim, it too fails for these same reasons.

5 In their reply brief, Defendants argue that Count IX, Intentional Infliction of Emotional Distress, should be dismissed because it is based on corresponding claims that fail. (ECF No. 44, PageID.579). However, Defendants did not move to dismiss this claim in their initial motion and thus, the court declines to address this argument. *See* *Miller v. Chase Bank USA, NA*, 2012 WL 2862269, at *3 (N.D. Ohio July 11, 2012) (citing *Rush v. Illinois Cent. R.R. Co.*, 399 F.3d 705, 727 n. 19 (6th Cir. 2005)) (A party may not raise, for the first time, an argument in a reply because it denies the opponent an opportunity to respond.).

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.