**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION**

WHITNEY HODGES,
as Personal Representative of the
ESTATE OF HONESTIE HODGES,

Plaintiff,

v.

CITY OF GRAND RAPIDS;
OFFICER SPENCER SELLNER
(individual and official capacity);
OFFICER ANTHONY BARBERINO
(individual and official capacity); and,
OFFICER JEFFREY DIONNE
(individual and official capacity),

Defendants.

Case No. 1:23-cv-01230-HYJ-SJB

Honorable Hala Y. Jarbou

_______________________________________________________/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
*Attorneys for Plaintiff*
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

Elizabeth J. Fossel (P41430)
Sarah J. Hartman (P71458)
City of Grand Rapids Law Department
*Attorney for Defendants City of Grand Rapids, Spencer Sellner, Anthony Barberino, and Jeffrey Dionne*
300 Monroe Avenue NW, Suite 620
Grand Rapids, Michigan 49503
Phone: (616) 456-3099
E-mail: efossel@grand-rapids.mi.us
E-mail: shartman@grand-rapids.mi.us

_______________________________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# EXHIBIT 2

2023 WL 1784745
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Louis STREETER, Jr., Plaintiff,
v.
MACOMB COUNTY, et al., Defendants.

Civil Case No: 22-10287
|
Signed February 6, 2023

**Attorneys and Law Firms**

Shawn C. Cabot, Christopher Trainer and Assoc., White Lake, MI, for Plaintiff.

John A. Schapka, Robert S. Gazall, Macomb County Corporation Counsel Office, Mount Clemens, MI, for Defendants Macomb County, Alyssa Sciacca, Jesse Kennedy, Mark Green, W. Ash.

Raechel M. Badalamenti, Robert S. Huth, Jr., Victoria Lee Padula, Kirk, Huth, Lange & Badalamenti PLC, Clinton Township, MI, for Defendants Shelby Township, Dylan Najjar, Justin Goebel.

Devlin K. Scarber, Jeffrey Bomber, Chapman Law Group, Troy, MI, for Defendant Hasan Arrat.

**OPINION AND ORDER DENYING DEFENDANT HASAN ARRAT'S MOTION TO DISMISS (ECF NO. 26)**

LINDA V. PARKER, UNITED STATES DISTRICT JUDGE

***1** On August 29, 2020, Shelby Township police arrested Louis Streeter, Jr. ("Plaintiff") and transported him to the Macomb County Jail ("MCJ"). While detained at the MCJ, Plaintiff fell from a top bunk and injured his right foot. After his release, Plaintiff brought suit against Hasan Arrat, M.D., Macomb County, Shelby Township, the arresting police officers, and MCJ staff. As to Dr. Arrat, Plaintiff alleges that, after he injured his foot, Dr. Arrat intentionally ignored his injury and complaints of pain, which constituted deliberate indifference in violation of the Fourteenth Amendment and gross negligence under Michigan law. The matter is presently before the Court on Dr. Arrat's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 26.) The motion has been fully briefed. (ECF Nos. 26, 27, 30.) For the reasons that follow, the Court denies Dr. Arrat's motion.

## I. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert

the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**II. Documents Attached to Dr. Arrat's Motion**

***2** Attached to Dr. Arrat's motion is a radiology report concerning the x-ray of Plaintiff's ankle taken on August 31, 2020, after he fell. (ECF No. 26-2.) Dr. Arrat indicates that the x-ray revealed "no evidence of acute fracture," "no dislocation," and "no radiographic evidence of acute disease in the right ankle." (ECF No. 26 at Pg ID 209.) Dr. Arrat argues that the Court may consider the x-ray findings when analyzing his motion to dismiss because it is referenced in the Complaint and is central to Plaintiff's claims, citing as authority *Magnum v. Sevier County*, No. 14-CV-264, 2015 WL 729524 (E.D. Tenn. Feb. 19, 2015).

Although the Complaint references the x-ray (*see* ECF No. 1 at Pg ID 7, ¶ 33,) the Court disagrees with Dr. Arrat that the x-ray results are central to Plaintiff's claims of deliberate indifference and gross negligence. Plaintiff bases his claims not on the x-ray's findings, but on Dr. Arrat's response to Plaintiff's symptoms—*e.g.*, pain, swelling, bruising, difficulty walking—and the later discovery of fracture at the hospital following Plaintiff's release from jail. The x-ray may be relevant to Dr. Arrat's *defenses* insofar as it rebuts Plaintiff's claim of serious medical need or deliberate indifference to such need; however, a document relevant to a defendant's defenses is not necessarily central to a plaintiff's claim. *See, e.g., DeVolder v. Lee*, No. 14-cv-10624, 2014 WL 4182452, at *3 (E.D. Mich. Aug. 21, 2014) (finding that a plaintiff's transcript of testimony in prior divorce proceedings where she was represented by the defendants was not central to her legal malpractice claims although it may have been central to the lawyers' defenses).

Furthermore, Dr. Arrat's reliance on *Magnum* is misplaced. In that case, the plaintiff brought a deliberate indifference claim for alleged abuse during his custody in a county jail. Specifically, the plaintiff claimed that the jail's nurses failed to provide adequate care after learning about the plaintiff's history of severe alcohol withdrawal and after jail guards allegedly beat the plaintiff nearly to death. *Mangum*, 2015 WL 729524 at *1. In denying the defendants' motion to dismiss, the court considered the plaintiff's jail medical records, finding them central to his claims. *Id.* at *3. In so holding, the *Magnum* court noted that the plaintiff referenced his medical records repeatedly in his complaint. *Id.*

*Magnum* is inapposite here because Plaintiff mentions the x-ray only once in passing, and does not use it to establish his factual allegations. (ECF No. 1 at ¶ 33.) The plaintiff in *Magnum*, in comparison, referenced his jail medical records to establish the factual basis of his claims of serious medical need and deliberate indifference to that need. *See* Complaint, *Magnum v. Sevier Cnty.*, No. 14-CV-264 (E.D. Tenn. Feb. 19, 2015), ECF No. 1. In contrast, Plaintiff here presents a narrative of his experience in the MCJ without reference to the x-ray findings. Plaintiff attempts to establish his claims by describing his physical symptoms and Dr. Arrat's interactions with him following Plaintiff's fall. (*See* ECF No. 1 at Pg ID 7-10, ¶¶ 34-52.)[1] Therefore, the Court will not consider the x-ray findings when adjudicating the motion to dismiss.[2]

**III. Factual Background**

***3** Shelby Township police officers arrested Plaintiff on August 29, 2020. The officers took Plaintiff to the MCJ, and Plaintiff was booked early the following morning. (ECF No. 1 at Pg ID 3-4, ¶¶ 13-20.) Later that morning, MCJ medical staff evaluated Plaintiff and recommended that he be placed in a cell with a low bunk due to his medical history. (*Id.* at Pg ID 5, ¶¶ 24-26.)

Despite the medical staff's recommendation, MCJ correctional officers placed Plaintiff in a cell with only a top bunk. (*Id.* at Pg ID 6, ¶¶ 27-29). In the evening of August 30, Plaintiff fell from the top bunk while attempting to go to the bathroom. (*Id.* ¶ 31.) As a result, he sustained an injury to his right foot which caused him "significant pain" and "immediate swelling" and rendered him unable to bear weight on the foot. (*Id.*) An x-ray was ordered that night and taken the next day. (*Id.* at ¶ 33.)

On August 31, Plaintiff met with Dr. Arrat, who provided care for MCJ detainees. (*Id.* at Pg ID 2, 7, ¶¶ 6, 36.) Upon Dr. Arrat's inquiry, Plaintiff explained what occurred. (*Id.* at Pg ID 7, ¶ 36.) Plaintiff also showed Dr. Arrat his foot, which had swelled to twice its normal size. (*Id.*) Dr. Arrat then asked whether Plaintiff had "foot gout," and Plaintiff answered that he did not. (*Id.* at Pg ID 7, ¶¶ 36-37.) Despite Plaintiff's claims of "excruciating pain," Dr. Arrat denied Plaintiff's request to

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

be treated at the hospital and his request for a wheelchair, instead giving Plaintiff a walker. (*Id.* ¶ 38.)

The next day, September 1, Dr. Arrat took away a wheelchair which Plaintiff managed to obtain, and forced Plaintiff to bear weight on his foot during an evaluation. (*Id.* at Pg ID 8, ¶ 39.) This caused Plaintiff to fall again. (*Id.* ¶ 40.) Over the next few days, Dr. Arrat continued to deny Plaintiff's requests for a wheelchair or to go to the hospital, despite Plaintiff's symptoms. In addition to the "excruciating and ongoing" foot pain, Plaintiff claims that his symptoms included "red/purplish" bruising on his foot and toes, skin warm to the touch, pitting edema to the mid-calf, and absent pedal pulse. (*Id.* ¶¶ 43-47.) Plaintiff also alleges that Dr. Arrat ignored his requests for accommodation due to difficulty showering and walking to get his medications. (*Id.* ¶¶ 49-50.) In response to Plaintiff's repeated complaints, Dr. Arrat told him that he had "foot gout" and advised him to "walk it off." (*Id.* ¶¶ 48, 51.)

After Plaintiff was released from MCJ on September 15, he went to the hospital to address his continuing pain. (*Id.* at Pg ID 10, ¶¶ 52, 53.) At the hospital, it was discovered that Plaintiff had an acute multipart fracture in his right foot. (*Id.* ¶ 53.) On September 21, the charges against Plaintiff were dismissed. (*Id.* ¶ 54.)

On February 11, 2022, Plaintiff initiated this action against Macomb County, Shelby Township, the MCJ employees/correctional officers, the Shelby Township Police Officers, and Dr. Arrat. Plaintiff alleges that Dr. Arrat tortiously failed to give him adequate medical care after his fall on August 30. The allegations against Dr. Arrat are contained in Counts I and II of the Complaint, in which Plaintiff asserts a claim of deliberate indifference under 42 U.S.C. § 1983 and a claim of gross negligence under Michigan law, respectively.

**IV. Analysis**

As an initial matter, as the Court reads the Complaint, Plaintiff is not alleging that Dr. Arrat played a role in failing to assign him a low bunk. The tenor of the allegations against Dr. Arrat appear to be in relation to his interactions with Plaintiff *after* he was placed in a top bunk and fell. (*See generally* ECF No. 1.) Thus, the Court understands Plaintiff's claims against Dr. Arrat to be directed at his conduct after Plaintiff's fall.

***4** Insofar as Plaintiff maintains that Dr. Arrat was involved in Plaintiff's placement in a cell without a low bunk, the Complaint details no facts which would plausibly implicate Dr. Arrat personally. *See Iqbal*, 556 U.S. at 677 (explaining that, absent vicarious liability, a government official in a § 1983 suit "is only liable for his or her own misconduct"). In the Complaint, Plaintiff makes no mention of Dr. Arrat's involvement until Dr. Arrat's evaluation of Plaintiff after the fall. Instead, Plaintiff only claims that "MCJ Medical Staff" faxed two memos to jail staff recommending a low bunk detail for plaintiff. (ECF No. 1 at Pg ID 6, ¶¶ 27, 29.) Even assuming "MCJ Medical Staff" refers to Dr. Arrat, these allegations suggest, if anything, that Dr. Arrat ordered a low bunk detail for Plaintiff, rather than that Dr. Arrat prevented his placement there.

**A. Deliberate Indifference**

The legal standard for a deliberate indifference claim based on medical need in a § 1983 action brought by a pretrial detainee is currently in flux in the Sixth Circuit. *See generally Westmoreland v. Butler Cnty.*, 35 F.4th 1051 (6th Cir. 2022) (Bush, J., dissenting from the denial of rehearing en banc). The Circuit previously adjudicated these types of claims under the framework established in *Farmer v. Brennan*, 511 U.S. 825 (1994), for Eighth Amendment deliberate indifferent claims, which required a plaintiff to show that: (1) the plaintiff suffered an objectively and sufficiently serious deprivation; and (2) the defendant acted or failed to act with a sufficiently culpable state of mind that amounted to deliberate indifference. *Id.* at 834. The Supreme Court explained that for a prisoner to state an Eighth Amendment claim, the deprivation must be one that "poses a substantial risk of serious harm," *id.*, and that "deliberate indifference" was analogous to criminal recklessness, and thus required that the defendant to have been subjectively aware of the risk of harm, *id.* at 837.

Until the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Sixth Circuit implemented this test for deliberate indifference claims brought by both post-conviction inmates as well as pre-trial detainees, even though the right of pre-trial detainees to be free from the use of excessive force against them is secured under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Id.* at 397, 400. Reasoning that it is unlawful to "punish" pretrial detainees at all, the Court ruled that a pretrial detainee alleging excessive force need only show that the "force purposely or knowingly used against him was objectively unreasonable." *Id.* at 397. Therefore, the plaintiff need not demonstrate that the defendant knew at the time that the force was unreasonable. *Id.* at 396.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

Responding to *Kingsley*, the Sixth Circuit altered the *Farmer* test as applied to pretrial detainees in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021), *cert. denied* 143 S. Ct. 84 (2022).[3] The *Brawner* court reasoned that *Kingsley*'s holding obviated the *Farmer* court's rationale for choosing a "criminal recklessness" standard. *Id.* at 595. Instead, the *Brawner* court found a "civil recklessness" standard more appropriate, which permits liability even when the defendant was unaware—but *should* have known—of the risk. *Id.* at 596. Specifically, a pretrial detainee alleging deliberate indifference must show:

> (1) that [the plaintiff] had an objectively serious medical need; and (2) that [the defendant's] action (or lack of action) was intentional (not accidental) and [the defendant] either (a) acted intentionally to ignore [the plaintiff's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the plaintiff], even though a reasonable official in [the defendant's] position would have known that the serious medical need posed an excessive risk to [the plaintiff's] health or safety.

***5** *Id.* at 597. Thus, "[f]ollowing *Brawner*, a pretrial detainee establishes [the second element of] deliberate indifference by proving 'more than negligence but less than subjective intent—something akin to reckless disregard.' " *Westmoreland*, 29 F.4th at 728 (quoting *Brawner*, 14 F.4th at 596-97. "A defendant must have acted deliberately (not accidentally) and recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.' ") *Id.* (quoting *Brawner*, 14 F.4th at 596).

Despite *Brawner*, Sixth Circuit panels continue to struggle with the precise standard applicable to pretrial detainee deliberate indifference claims. *See Westmoreland*, 35 F.4th at 1052 (Bush, J., dissenting from the denial of rehearing en banc) (noting the various Sixth Circuit decisions grappling with the issue after *Brawner*). For instance, Dr. Arrat relies on *Trozzi v. Lake County*, 29 F.4th 745 (6th Cir. 2002), which offers a standard that retains a purely subjective inquiry into a defendant's state of mind. *Id.* at 757-58 (6th Cir. 2022). For his part, Plaintiff argues that the motion to dismiss should be denied under either test. (ECF No. 27 at Pg ID 297.)

At this juncture, the Sixth Circuit has declined to resolve the intra-circuit conflict through en banc review. *See, e.g.*, *Westmoreland*, 35 F.4th at 1051 (denying petition for rehearing en banc). And the Supreme Court recently denied the petition for a writ of certiorari in *Brawner.* 143 S. Ct. 84. Without the benefit of a definitive ruling, this Court relies on *Brawner*, for "[o]ne panel cannot overrule a prior panel's published decision." *United States v. Washington*, 127 F.3d 510, 517 (6th Cir. 1997).[4]

### 1. Objectively Serious Medical Need

A plaintiff may establish an objectively serious medical need by showing that his or her condition was either "diagnosed by a physician as mandating treatment" or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (internal quotation marks and citation omitted). Here, Plaintiff's fracture was not diagnosed until after his release from jail; thus, he must show that, when evaluated by Dr. Arrat, the need for treatment was so obvious that a lay person would recognize it.

The case law concerning what exactly constitutes a serious medical need is incongruous. *Compare Wirtz v. Buchanan*, No. 11-cv-1131, 2013 WL 372462, at *7 (S.D. Ohio Jan. 30, 2013) (finding that the injuries of an inmate complaining of foot pain who also fell from a top bunk were not serious) *with Gray v. Dorning*, No. 99-5212, 1999 WL 1336118, at *1 (6th Cir. Dec. 20, 1999) (finding that a reasonable lay person "would have recognized the need for prompt treatment after [the plaintiff] fell out of a top bunk and asserted that he had suffered a fracture and was in pain").

***6** Whether a plaintiff suffered "an objectively serious medical need" depends much on the specific circumstances of each case. It appears that some courts are reluctant to consider sprained ankles, mild pain, or bone spurs as serious. *See Wirtz*, 2013 WL 372462, at *7 (collecting cases).[5] Fractures, on the other hand, are generally accepted as serious. *See, e.g., Young v. Campbell Cnty.*, 846 F. App'x 314, 326 (6th Cir. 2021) ("[The plaintiff's] knee fracture clearly qualifies as a serious medical need). Other courts—the Seventh Circuit, for example—recognize that pain alone can be sufficiently serious for the purposes of deliberate indifference, because

it is sometimes the only symptom of a serious medical condition. *See Smith v. Perez*, No. 13 C 3490, 2015 WL 5821442, at *2 (N.D. Ill. Oct. 2, 2015) (citing *Cooper v. Casey*, 97 F.3d 914, 916-917 (7th Cir. 1996)); *see also Vaughn v. City of Lebanon*, 18 F. App'x 252, 275 (6th Cir. 2001) (recognizing that "subjective feelings of pain may, if sufficiently egregious, satisfy the objective component").

Plaintiff's Complaint describes symptoms following his fall sufficient to allege the required obviousness. In particular, the Complaint provides that Plaintiff was 68 years old with restricted mobility and a history of joint issues and chronic foot pain. (ECF No. 1 at Pg ID 4, ¶ 21.) Plaintiff's description of the fall from the top bunk "causing significant pain and injury such that there was immediate swelling and he was unable to bear weight on same" reasonably suggests an obvious need given his advanced age and medical history. (*Id.* at Pg ID 6, ¶ 31.) Furthermore, Plaintiff's description of subsequent symptoms of "excruciating pain" (*id.* at Pg ID 7, ¶ 38), inability to walk on his foot (*id.* at Pg ID 8, ¶ 39), red/purple bruising extending to his toes (*id.* ¶ 44), pitting edema up to his mid-calf, warm skin, and absent pedal pulse (*id.* at Pg ID 9, ¶ 46), at least in combination, paint a clear-enough picture that a reasonable lay person would "easily recognize the necessity for a doctor's attention."

Moreover, the discovery of a multipart fracture soon after Plaintiff's release from jail allows a reasonable inference that the fracture was sustained during Plaintiff's detention. While this inference may not implicate Dr. Arrat's alleged indifference—since the fracture was not diagnosed until after Plaintiff's release—it does supplement the plausibility of Plaintiff's claim of an objectively serious medical need.

Dr. Arrat counters by comparing the instant case to *Wirtz.* However, *Wirtz* is inapposite because of the difference in circumstances. In that case, the plaintiff sued a doctor for deliberate indifference based on the delayed replacement of an ankle brace. *Wirtz*, 2013 WL 372462, at *1. The plaintiff alleged that he suffered pain and weakness in his leg and eventually fell onto the floor while climbing a bunk, injuring his head, wrist shoulder, and thigh. *Id.* at *7. The court held that the plaintiff's condition was not objectively serious, reasoning that there was no evidence to suggest that the pain interfered with his daily life, as he did not seek treatment with any regularity. The court also noted that the plaintiff offered no evidence of need other than his claims of pain. *Id.*

In contrast, Plaintiff sought treatment for his injury repeatedly. Indeed, Plaintiff requested referral to the hospital on multiple occasions. (ECF No. 1 at Pg ID 7, 9, ¶¶ 38, 47.) Additionally, Plaintiff made Dr. Arrat aware of the limitations the injury was placing on his movement and daily routines. (*Id.* at Pg ID 8-9, ¶¶ 40, 41, 49, 50.) These allegations, in combination with the various symptoms the Complaint details, provide a much more solid basis for finding a serious need than the facts in *Wirtz.*

**2. Deliberate Indifference to Serious Medical Need**

***7** To reiterate, the second element of a deliberate indifference claim requires a pretrial detainee to show that: (1) the defendant's harm-causing acts or omissions were deliberate, not accidental; and either that (2) the defendant knew that his or her behavior carried a substantial risk of harm; or (3) the risk of harm was so obvious that the defendant should have known about it. *See Brawner*, 14 F.4th at 596-98.

The Sixth Circuit has described deliberate indifference as an "unnecessary and wanton infliction of pain." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 91, 104 (1996)). Accordingly, an action lies when the defendant's deliberate indifference causes the plaintiff to "suffer[ ] pain needlessly when relief is readily available." *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1979)).

Notably, the Sixth Circuit also distinguishes deliberate indifference claims that allege denial of care with those that allege inadequate care, because federal courts are reluctant to constitutionalize claims that properly sound in state tort law. *Westlake*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Courts have held that a plaintiff's mere difference of opinion with his doctor regarding diagnosis and treatment do not state a claim of deliberate indifference. *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 528 (6th Cir. 2003) (citing *Estelle*, 429 U.S. at 107). However, "when the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 551 (6th Cir. 2009) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)).

Contrary to Dr. Arrat's assertions that the Complaint reveals no more than disagreement with his professional judgment

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

(ECF No. 30 at 6), a fair reading of Plaintiff's pleading plausibly suggests that Dr. Arrat acted deliberately in disregard of Plaintiff's medical need, which Dr. Arrat either knew about or should have known about. Specifically, the Complaint alleges that Dr. Arrat denied Plaintiff's repeated requests to go to the hospital after a fall that resulted in extreme pain, swelling, and inability to bear weight. (ECF No. 1 at Pg ID 7, 9, ¶¶ 38, 47.) Additionally, the Complaint states that Dr. Arrat not only denied Plaintiff a wheelchair after the fall, but in fact took the wheelchair that Plaintiff managed to obtain, despite Plaintiff's extreme pain while bearing weight. (*Id.* at Pg ID 8, ¶ 39.)

Significantly, the Complaint also characterizes Dr. Arrat's demeanor as intentionally indifferent. For instance, Plaintiff alleges that Dr. Arrat "forced" and "compelled" Plaintiff to use a walker despite his painful gait. (*Id.* ¶¶ 41, 42.) In addition, the Complaint alleges that Dr. Arrat not only denied Plaintiff's requests for accommodations to alleviate the pain (*id.* at Pg ID 9, ¶ 50), but he also told Plaintiff to "walk it off" in response to Plaintiff's complaints, (*id.* at ¶ 51.) These allegations, read in a light most favorable to Plaintiff, plausibly suggest that Dr. Arrat was dismissive of Plaintiff's complaints and provided care so cursory that it amounted to no care at all, thus causing Plaintiff to suffer needlessly.

Furthermore, taken as a whole, the Complaint plausibly alleges that Dr. Arrat was either aware of Plaintiff's medical need or at least should have been aware of it because of its obviousness. Plaintiff alleges that he informed Dr. Arrat of his symptoms, asked Dr. Arrat to send him to the hospital, and showed Dr. Arrat his foot. Further, Plaintiff's symptoms of swelling and bruising are alleged to have been prominent. Hence, the Complaint's description of Dr. Arrat's behavior plausibly suggests that despite his awareness of the risk of harm—or obliviousness (i.e., not concerned) to the obvious risk—he intentionally failed to provide relief to Plaintiff's injury.

***8** In response, Dr. Arrat suggests that these allegations should be interpreted as a difference of opinion because the Complaint states that Dr. Arrat: (1) examined Plaintiff repeatedly, noting that he had weakness in his lower limbs; (2) told Plaintiff he had "foot gout;" (3) ordered Plaintiff to use a walker rather than a wheelchair; and (4) told Plaintiff to "walk it off." Dr. Arrat argues that these allegations should be interpreted as Dr. Arrat attempting to diagnose Plaintiff with gout and treating him accordingly by having him stay mobile on a walker rather than immobile in a wheelchair or unstable on crutches. (ECF No. 26 at Pg ID 217.)

To support his position, Dr. Arrat points to *Howell v. NaphCare, Inc.*, No. 19-cv-373, 2022 WL 740928 (S.D. Ohio Mar. 11, 2022). In that case, the estate of the decedent, a jail detainee, alleged that jail staff failed to adequately treat the detainee's sickle cell disease, which the estate argued caused his death. *Id.* at *1. After the detainee collapsed following a jail fight, one of the defendant nurses checked his vitals and found them to be normal. Although the nurse was aware of the detainee's sickle cell disease, she concluded that he was having a psychiatric episode. Staff then ordered him restrained. He died hours later. *Id.*

The *Howell* court held that the nurse was not deliberately indifferent, because she provided the jail detainee "treatment pursuant to a diagnosis consistent with the detainee's symptoms, even if that diagnosis [was] ultimately mistaken." *Id.* at *7. The district court relied on a recent Sixth Circuit decision finding that a nurse's failure to diagnose a detainee's endocarditis, which eventually claimed the detainee's life, did not rise to the level of recklessness required under *Brawner*. *Id.* (citing *Britt v. Hamilton Cnty.*, No. 21-3424, 2022 WL 405847, at *3 (6th Cir. Feb. 10, 2022)). In *Britt*, the Sixth Circuit explained that the decedent's symptoms were consistent with the heroin withdrawal that the decedent had complained of previously, and for which the nurses had provided care. *Britt*, 2022 WL 405847, at *3. Therefore, the court reasoned, the risk from endocarditis was not so obvious that the defendants should have been aware of it. *Id.*

Neither *Howell* nor *Britt* is probative here. First, both cases were decided on summary judgment after discovery. The present motion is a motion to dismiss, which was fully briefed before any discovery and is subject to a different standard of review. Here, the Court's review is limited to Plaintiff's allegations. In *Howell*, the court was presented with evidence indicating that the defendants believed the jail detainee was suffering from a psychiatric episode. This belief, the court found, was not inconsistent with his symptoms. *Howell*, 2022 WL 740928, at *7. Here, in contrast, the Court lacks sufficient facts to make conclusions about Dr. Arrat's beliefs and whether they were consistent with Plaintiff's symptoms.

Second, the detainees in *Howell* and *Britt* did not deny having the condition that the medical practitioner thought was the source of their symptoms. In *Britt*, the detainee told jail staff he was suffering from heroin withdrawal. 2022 WL

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. 

405847, at *1. This in fact led the court to determine that the defendants' actions did not rise to deliberate indifference, as the defendants reasonably assumed that the withdrawal was the cause of the detainee's slightly elevated temperature and heart rate. *Id.* at *3. In contrast here, Plaintiff specifically told Dr. Arrat he did not have "foot gout." (ECF No. 1 at Pg ID 7, ¶ 37.)

In short, the Complaint contains sufficient facts to allege that Dr. Arrat's actions were in fact *not* the result of a mere misdiagnosis, but instead constituted purposeful disregard of Plaintiff's serious injury, subsequently causing him unnecessary suffering: in other words, deliberate indifference.

### B. Gross Negligence

***9** In Count II of his Complaint, Plaintiff alleges that Dr. Arrat's actions amounted to gross negligence. (ECF No. 1 at Pg ID 12-13, ¶¶ 66-73.) Dr. Arrat argues that Count II should be dismissed because "gross negligence" is not an independent cause of action under Michigan law. (ECF No. 26 at Pg ID 219-20.) He further asserts that, properly considered, Count II is in fact a claim of medical malpractice subject to Michigan's special filing requirements. *See* Mich. Comp. Laws §§ 600.2912a, *et seq.* Because Plaintiff failed to give notice of intent to sue and to attach an affidavit of merit to his Complaint, Dr. Arrat argues that Count II should be dismissed. (ECF No. 26 at Pg ID 219-20.)

Dr. Arrat is correct that "gross negligence" is not an independent cause of action in Michigan. Instead, the phrase is a term of art which provides an exception to Michigan's governmental tort liability act ("GTLA"). Of relevance here, GTLA grants government employees immunity from tort liability so long as the employee's "conduct does not amount to gross negligence."[6] Mich. Comp. Laws § 691.1407(2)(c). The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* § 691.1407(8)(a). "A party filing suit against a governmental agency or officer bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 835 N.W.2d 545, 550 (Mich. 2013). It is perhaps for this reason that parties suing state agencies and/or officers regularly label their claims "gross negligence" as opposed to simply "negligence." The label used, therefore, does not warrant a dismissal of Count II.

The Court also rejects Dr. Arrat's argument that dismissal is warranted because Plaintiff failed to adhere to Michigan's special filing requirements for medical malpractice claims. Michigan law requires plaintiffs suing for medical malpractice to provide notice of intent to sue and to attach an affidavit of merit to the complaint. *Id.* §§ 600.2912b, 600.2912d. This Court has held, however, that a plaintiff bringing a state law medical malpractice action in federal court does not need to adhere to Michigan's filing requirements for such actions. *Stojcevski v. Cnty. of Macomb*, 143 F. Supp. 3d 675, 692-93 (E.D. Mich. 2015).

In *Stojcevski*, this Court concluded that Michigan's filing requirements for medical malpractice claims are procedural and thus not mandatory in federal court. This Court adopted the analysis set forth in *Long v. Adams*, 411 F. Supp. 2d 701 (E.D. Mich. 2006), which reasoned that the filing requirements unavoidably conflict with Rule 8 of the Federal Rules of Civil Procedure. *Id.* at 705-07; *see also Hall v. Wellpath*, No. 20-cv-10670, 2021 WL 267780, at *3 (E.D. Mich. Jan. 27, 2021) (finding no error in the magistrate judge's reliance on *Long*).[7] Given that the Sixth Circuit has not addressed this issue, the Court finds no reason to depart from its prior holding.

Therefore, even construing Count II as a medical malpractice claim, Plaintiff's failure to comply with Michigan's requirements is not a basis for dismissing the claim against Dr. Arrat.

## IV. Conclusion

When assumed true—as they must in deciding a Rule 12(b)(6) motion—Plaintiff's allegations plausibly state claims of deliberate indifference and gross negligence against Dr. Arrat.

***10** Accordingly,

**IT IS ORDERED** that Defendant Hasan Arrat's Motion to Dismiss (ECF No. 26) is **DENIED**.

## All Citations

Not Reported in Fed. Supp., 2023 WL 1784745

## Footnotes

1 The substance of Dr. Arrat's argument regarding the x-ray seems to be that: Dr. Arrat saw the x-ray findings, relied on them, and thus concluded that there was no fracture. Even if the x-rays were to be considered, this argument is improper in a motion to dismiss because it relies on facts neither in the Complaint nor in the x-ray findings.

2 While the Court declines to consider the x-ray findings, it finds it unnecessary to strike the x-ray findings from the record as Plaintiff requests.

3 Sixth Circuit panels were faced with pretrial detainee deliberate indifference claims between *Kingsley* and *Brawner*; however, as the court noted in *Brawner*, those decisions "expressly reserved the question whether *Kingsley* requires modification of the deliberate-indifference standard." *Brawner*, 14 F.4th at 596.

4 Although deciding that *Brawner* is controlling here, the Court agrees with Plaintiff that his claims against Dr. Arrat survive the motion to dismiss even under the *Trozzi* standard, because the allegations allow a reasonable inference that Dr. Arrat was subjectively aware of the risk of harm to Plaintiff, as discussed below.

5 *But see Nelson v. Wilson*, No. 19-CV-00009, 2021 WL 7368628, at *10 (W.D. Mich. Dec. 30, 2021), *report and recommendation adopted*, No. 19-CV-9, 2022 WL 443615 (W.D. Mich. Feb. 14, 2022) ("a question of fact exists whether ... [the plaintiff's] ankle sprain was a serious medical condition").

6 It is not clear from the record whether Dr. Arrat is a municipal employee or employed by a private entity with which the county has contracted to provide healthcare at the jail. In any event, at this stage, the Court finds it unnecessary to address whether the statute provides immunity to Dr. Arrat.

7 *But see Johnson v. Williams*, No. 15-13856, 2017 WL 4236548, at *15 (E.D. Mich. Sep. 25, 2017) (holding that the requirements are substantive).

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.